## SUPREME COURT — APPELLATE DIVISION — FOURTH DEPARTMENT.

### June 30, 1922.

## THE PEOPLE v. RICHARD J. COUNTRYMAN.

(201 App. Div. 805.)

(1) RAPE—EVIDENCE CORROBORATING COMPLAINANT INSUFFICIENT TO SUSTAIN CONVICTION.

In a prosecution for rape a judgment of conviction in the second degree should be reversed and a new trial granted where, aside from the testimony of the complainant, there is no evidence that the defendant was with her at any time during the evening in question and his denial of the fact that he was with her at all is corroborated.

(2) SAME.

While disclosures by the complainant to her mother and to others made soon after the crime was perpetrated were competent, they were not other evidence in support of her testimony, nor were the statements claimed to have been made by the wife of the defendant to the effect that he was guilty, nor his silence, of any probative force to establish his guilt. Moreover, it seems that such evidence was improper and prejudicial.

(3) SAME—IMPROPER TO PERMIT PROSECUTION TO IMPEACH OWN WITNESS BY SHOWING HE HAD BEEN CONVICTED OF CRIME—OR THAT A WITNESS HAD NOT MADE CERTAIN STATEMENTS TO WHICH THE WITNESS TESTIFIED.

It was improper to permit the district attorney to cross-examine and impeach a witness called by him by showing that the witness had been convicted of a crime, and for the same reason it was improper to permit the assistant district attorney to testify that a witness for the People had not made certain statements to which the witness testified.

(4) SAME—RULE THAT JURY HAS RIGHT TO DISREGARD TESTIMONY OF WITNESS REQUIRES THAT WITNESS MUST INTENTIONALLY GIVE FALSE TESTIMONY RELATING TO MATERIAL POINT.

It was erroneous and prejudicial for the trial judge to instruct the jury that if any of the witnesses had evaded or covered up something or were not telling the truth, then the jury had the right to cast their testimony aside and decide the case upon the other testimony, for such rule requires not only that the testimony be false, but the witness must intentionally give false testimony, and it must relate to a material point.

DAVIS, J., dissents, with opinion.

APPEAL by the defendant, Richard J. Countryman, from a judgment of the County Court of the county of Jefferson, rendered on the 15th day of February, 1921, convicting him of the crime of rape in the second degree, and also from an order entered in said clerk's office on the 3d day of March, 1921, denying defendant's motion for a new trial made upon the minutes.

*Nathaniel F. Breen,* for the appellant.

*T. Arthur Hendricks, District Attorney (E. R. Wilcox,* of counsel), for the respondent.

KRUSE, P. J.:

The defendant, a married man having a wife and three children, was indicted for the crime of rape in the first degree committed upon a girl about fourteen years of age, and was convicted of rape in the second degree.

One evening in June, two years ago, the girl left home with a young man about seventeen years of age to watch the loading of a circus at the railroad,. a short distance from her home in the village of Carthage. She left her home about 9 or 9:30 o'clock with the young man and returned alone about 10 or 10:30 o'clock in a nervous and excited condition, claiming that the defendant had defiled her. It is reasonably certain that some one had perpetrated this act upon her, but there is grave doubt that the defendant did it.

The girl tells a strange story. She says that she went with the young man to the railroad, watched the loading for about half an hour and he left her. The defendant, whom she knew by sight only, and had never spoken to, came along and told her that her father was at the circus and wanted to see her; that they went up the street; thence along a path across the lot towards the circus grounds; that when they got near some willows he threw her down and assaulted her. After complaining twice of being hurt he let her up and she ran home and told her mother what had happened. Her mother asked her what had become of the young man she went away with and she told her. The same evening and the next day she also made substantially the same disclosure to others of what had happened.

The boy companion of the girl says that after watching the circus loading for a time his people (who lived a little ways out of town) came along and he rode home with them. He says he did not hear the defendant speak to the girl. The girl says the boy companion had gone home or was not near enough to hear.

The willows were about seventy-five feet from the street and near the path used as a short cut between the two streets, and was being used in going to and from the circus. There were electric lights in the vicinity, but it is claimed that the place where the alleged assault occurred was not lighted. Nothing was said or done by the girl by way of protest or resistance, according to her testimony, except the complaint before stated.

After making these disclosures to her mother, the mother wen' to the defendant's home. He was sitting at a table eating. She accused him of wronging her daughter, which he denied. Then, according to the testimony of the mother, the defendant's wife spoke up and told him that he was guilty; that she knew he was guilty; that she heard of him doing things like that before; that the defendant did not say anything; that the defendant's wife went with the mother to her home, where the girl was, and that she told her the same thing there.

Both the defendant and his wife deny that any such statements were made by the wife, but on the contrary say that the mother of the girl threatened to have the defendant arrested unless he settled. He denied the accusation.

Complaint was made the next day to a magistrate and the warrant issued. The defendant left early the next day and was gone for about three weeks, then returned voluntarily and gave bail.

The defendant denies that he was with the girl at all. He says that he saw her with the young man where they were loading the circus. He says he did not speak to her. He is corroborated by a messenger boy, who says that he saw the girl and her boy companion come from behind the cemetery on the opposite side of the railroad from where they were loading where it was dark; that the defendant walked on toward his home. Aside from the testimony of the girl there is no evidence that defendant was with her at any time during the evening.

I am of opinion that the evidence is insufficient to show that

defendant committed the crime. (People v. Page, 162 N. Y. 272; People v. Haischer, 81 App. Div. 559; People v. Kline, 152 id. 438; People v. Carey, 223 N. Y. 519.)

It has long been the law that no conviction can be had for rape or defilement on the testimony of the female defiled, unsupported by other evidence. (Penal Law, § 2013.)

And the corroboration must extend to every material fact essential to constitute a crime. (People v. Page, supra.)

While the supporting evidence need not be positive and direct, it must be sufficient to afford proof of the circumstances legitimately tending to show the existence of the material facts. (People v. Elston, 186 App. Div. 224.)

While the disclosures by the girl to her mother and to others, made soon after the crime was perpetrated, were competent (People v. O'Sullivan, 104 N. Y. 481), they were not " other evidence " in support of her testimony. (People v. Page, supra; People v. Murray, 183 App. Div. 468.)

Nor were the statements claimed to have been made by the wife, nor his silence, of any probative force to establish the guilt of her husband. (People v. Page, supra.) He had already denied the accusation. He was not called upon to get into a controversy with his wife. She did not claim to know anything about this matter or his intimacy with other women. Indeed, I think the evidence was improper and prejudicial.

Two other matters deserve attention. As before stated, the prosecution called a witness whose testimony upon cross-examination corroborated the defendant. The witness was sharply cross-examined by the district attorney and was asked whether he had not been convicted of stealing. He said he had. This evidence was received over the objection and exception of defendant. The evident purpose of making this inquiry was to impeach the witness. This the prosecution could not do. (People v. Minsky, 227 N. Y. 94.) The exception was well taken. And for the same reason it was improper to permit the

assistant district attorney to testify that the messenger boy had not made certain statements to him tending to contradict his testimony. (Berkowsky v. New York City R. Co., 127 App. Div. 544.)

In the course of his charge the trial judge stated that if any of the witnesses had evaded or covered up something, or they were not telling the truth, then the jury had the right to cast their testimony aside and decide the case upon the other testimony, because, as the judge stated, " if a person tells a falsehood in one thing, he is apt to tell it in another, and you have a right to so decide, if you desire, and you should apply that test to each and every witness in the case."

This was incorrect. The rule which the judge attempted to apply requires, not only that the testimony be false, but the witness must intentionally give false testimony and it must relate to a material point. (Hammelmann v. Bernhardt, 140 App. Div. 42.) This charge was excepted to by defendant's counsel. That the jury fully appreciated the effect of the charge as made is apparent from an inquiry made by one of them about the testimony of the messenger boy. The juror seems to have thought that the witness had testified incorrectly about a road behind the cemetery. The juror asked whether they ought to disregard the testimony and throw it out if there was no road there. This inquiry was not answered directly, but the testimony was called to their attention, which seems to indicate that the juror had not quite understood the testimony. I think this charge was erroneous and prejudicial.

Other questions are raised, but they require no discussion.

For the reasons stated, the judgment of conviction and order should be reversed upon the law and facts, and a new trial ordered.

All concur, except DAVIS, J., who dissents in an opinion.

DAVIS, J. (dissenting):

The verdict favorable to the prosecution permits the assumption of the following facts as testified to by the complaining witness: In the evening, with her mother's consent, she went to the railroad station with a boy of sixteen to watch the loading of a circus. It was a short distance from her home. While she stood unattended near the railroad tracks the defendant came to her and told her that her father wanted her. She went with him first toward where the circus was, as the defendant had said her father was there; and then they took a short cut across a field where in a somewhat secluded spot the defendant violated her, desisting only when she continued to complain of the pain. When released she ran the remaining distance to her home, which she reached in a state of hysteria, and throwing her arms around her mother's neck sobbed and shouted " Dick Countryman; Dick Countryman; " and told the story of what had happened. An immediate examination by her mother and another the next morning by a physician showed that she was bleeding and had been ravished.

To warrant the conviction of the defendant her testimony must be supported by other evidence connecting the defendant with the crime. (Penal Law, § 2013; People v. Shaw, 158 App. Div. 146; People v. Murray, 183 id. 468; People v. Page, 162 N. Y. 272; People v. Carey, 223 id. 519.) Such corroboration is here and is furnished by certain facts admitted or established by circumstantial evidence. She was seen running along the path, and her exclamations, testified to by others, are part of the *res gestæ*. The defendant was seen in the vicinity of the crime and admits seeing the girl, and that he was absent from his home at about the time in question. The credibility of his explanation of the circumstances was for the jury. Likewise his silence when after hearing the story of the child's mother and her accusation of him, his wife charged him with guilt, might properly be regarded as an admission. His con-

duct in remaining dressed or partially dressed in his home and sleeping on the floor all night after his wife had been to see the little girl, and his flight early the next morning when he knew he was charged with the offense, with false statements as to his destination to those who saw him, and other statements apparently false as to the purpose of his journey, and his absence from home for three weeks thereafter, may be regarded as evidence of his guilt. His explanation of the reason for his departure and absence and his voluntary return are merely facts to be considered as to whether his departure was an admission of guilt or otherwise. The weight and sufficiency of the corroborative evidence is for the jury. (33 Cyc. 1498.)

Shortly after the commission of the crime the child's mother came to the defendant's home and asked him what he had done to her daughter, and he replied that he had done nothing. His wife, after hearing the accusation, said she knew he was guilty and she had heard of his doing things like that before. The defendant then remained silent. Silence on the part of a man charged with a crime, where it would be proper for him to speak, may, when not excused or explained, be taken as an implied acquiescence in the truth of the charge. (Kelley v. People, 55 N. Y. 565; People v. Ferrara, 199 id. 414; 16 C. J. 631.) People v. Page (162 N. Y. 272), decided by a divided court, with only two members of the court concurring in the opinion, seems to hold a contrary doctrine, but the case is distinguishable. (See People v. Elston, 186 App. Div. 224.) Of course, his silence may be interpreted as a desire to avoid controversy with his wife, but, on the other hand, it may be interpreted as his being overwhelmed with accusations which were true and that further denial was futile. The interpretation of his conduct was for the jury.

The evidence of defendant's conduct immediately after he was charged with the crime, constituting part of the *res gestæ* or tending to show his guilt, was admissible (33 Cyc. 1458)

and his flight and absence are facts from which the jury may infer guilt. (People v. Ogle, 104 N. Y. 511; People v. Mayes, 66 Cal. 597; 16 C. J. 551.)

The admissions of a defendant are corroborative evidence. The facts I have detailed, if found by the jury to be true, constitute admissions. It is for the jury, not for the court, to determine controverted questions of fact where there are two sets of witnesses telling contradictory stories. (People v. Ferrara, supra.)

But we are told that errors occurred on the trial which furnished ground for reversal. The district attorney called a witness and when it appeared that he was reluctant, hostile or unsatisfactory, he was permitted to cross-examine and impeach him by showing he had been convicted of a crime. This was held error in People v. Minsky (227 N. Y. 94). That was a case where the defendant was indicted for murder in the first degree and convicted of murder in the second degree. A much stricter rule is applied in homicide cases than in the case of other crimes.

In the course of the charge the court said: " Now if you think a witness impressed you as telling the truth and the whole truth, why, you will give that testimony more weight than you would the testimony of another witness who was attempting to cover up something or evading something, in your opinion. You have a right to take into consideration the character of each witness upon the stand, their previous reputation. Now you know, from your own experience, that men of good character are more apt to tell the truth than men of bad character; not that they always do, but they are more apt to." And again, speaking on the subject of the interest of witnesses, the court said: " Now if you find that they have an interest and you think that they have evaded or covered up something or they are not telling the truth, then you have a right to cast their testimony aside and decide the case upon the other testimony

because if a person tells a falsehood in one thing he is apt to tell it in another, and you have a right to so decide if you desire, and you should apply that test to each and every witness in the case."

To this a general exception was taken, and it is claimed the charge was error because the court did not say that the witness must intentionally give false testimony and it must relate to a material point. (Hammelmann v. Bernhardt, 140 App. Div. 42.) That, although not expressly stated, could be implied from what the court said, and I cannot believe that the jury was misled. If error at all it was only technical error and harmless under the circumstances.

In view of the atrocious character of the crime committed on this little girl not fourteen years of age, and the strong evidence of guilt of the accused, and his conviction by a jury who saw and heard the witnesses, I decline to search the record for technical errors or defects, for they should be disregarded where the result seems just and where it appears that the substantial rights of the parties are not affected. (Code Crim. Proc., § 542.)

My vote is for affirmance.

Judgment of conviction and order reversed upon question of law and fact and new trial granted.