THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JULIUS R. THOMPSON, Appellant.

To make out the crime of blackmailing under the provision of the Penal Code, defining that offense (§ 558), it is not necessary to show that the threat was against the person to whom the letter was directed, or that the writer was the one threatening to do the wrongful act. The offense may

be committed by sending a letter conveying a threat of some other person, providing it is sent for the unlawful purpose mentioned in said provision.

Nor is it necessary to constitute the crime that the threat did, or should be calculated to inspire fear, and no precise form of words is required to convey the threat ; it may be done by innuendo or suggestion.

Defendant, an attorney, appeared for the complainant on the examination of J., who had been arrested on a warrant issued by a justice of the peace. J. was discharged. Afterward defendant wrote a letter to C., the father of J., to whom he had represented that he was deputy district attorney. The letter purported to come from the district attorney's office. It stated that there was imminent danger of a movement to indict J. ; that it was in the writer's power to arrest that movement ; that he had talked with the district attorney in reference to the matter, and had "killed" it thus far ; that he wanted to make that officer a present, and asked C. to send him $75, adding : " this will save you and your folks some trouble and expense, as well as the stink." There was in fact no complaint before the district attorney against J., and that officer knew nothing about the matter. Upon an indictment under said provision, *held*, that the letter might fairly be construed as conveying a threat that an indictment would be procured by some one against J.; and that a submission thereof to the jury to determine its meaning and effect was proper ; also, that it was immaterial that J. had been discharged by the justice, as this was not a bar to an indictment; nor was it material that no person was proceeding or threatening to indict J.

On the trial evidence was offered and received under objection and exception of a conversation between defendant and C., in which the former made statements similar to those contained in the letter, and requested money to stop the proceedings, which he claimed were imminent, to indict J. *Held* no error ; that the testimony was material and proper as bearing upon defendant's intent in writing the letter.

(Argued October 24, 1884 ; decided November 25, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made at the January term, 1884, which affirmed a judgment of the Court of Sessions in and for the county of Otsego, entered upon a verdict convicting the defendant of the crime of blackmailing.

The crime was alleged to have been committed by means of two letters written and sent by the defendant to Cornelius Winnie, of which the following are copies :

" OFFICE OF DIST. ATT'Y, OTSEGO CO.,          ⎱
     " R. M. TOWNSEND, DIST. ATT'Y,          ⎰
          " COOPERSTOWN, N. Y., *May* 6, 1883. ⎰

" FRIEND WINNIE — I had a long talk with District Attorney Townsend to-day and gave him the full particulars about Jule's case. He asked me what I thought about the matter. I told him I did not think he could be indicted. He said he would not issue any subpœna in the case. So you need not give yourself any trouble in the matter. I have it killed thus far. If there should be any further move made I can kill it, as Leslie E. Ferry and J. Stanley Brown of Schenevus are grand jurors from Maryland, and I can kill any thing that comes before the jury with those men on the jury.

"P. S. You told Hull you would give a note of $50 to kill the thing, and said you would give as much or more to stop it before it went before the jury as you would after it went. I think it is a good deal better to stop it here, then there will certainly be twenty-four men less to know it than there would if it went before the jury. I want to make Townsend a nice present. If you will send me $75 or a note of that amount payable in three months, it would be very acceptable. If you think that is too much, send what you think is right, as I want to do something nice for Townsend, as I may have some other things of the same nature at some other time. At all events, this will save you and your folks some trouble and expense as well as the stink, and show that a friend in the right place is worth something sometimes.

                    " Respectfully yours,
                         " JULIUS R. THOMPSON."

"OFFICE OF DIST. ATT'Y, OTSEGO CO.,          ⎱
     " R. M. TOWNSEND, DIST. ATT'Y,          ⎰
          " COOPERSTOWN, N. Y., *June* 8, 1883. ⎰

" FRIEND WINNIE. — I wrote you just before the session of the Supreme Court, the talk I had with Townsend, and he did not issue any subpœna against Jule. There is a court here this month, but no grand jury, and there will not be but one more grand jury before Jule's case will outlaw. I thought,

when I saw you, that there was no grand jury until September after the May term, but on looking at the terms of the court I find there is a grand jury in August, and that is the only one, so if he gets through that all right, then there can be nothing done against him after that. So I will look sharp after the matter and advise you if any thing is likely to be done in relation to the matter. I should have written you before, but I have been at Binghamton attending court and had no time. Got home last night, so take the first opportunity to write you.

"P. S. My compliments to your family.

"Respectfully yours,

"JULIUS R. THOMPSON."

Upon the trial it was admitted by the defendant that there was no complaint before the district attorney against the person named in the letters, and that the district attorney knew nothing about the matter and never was in any way connected with the defendant. It was proved that " Jule," mentioned in the letters, was Julian Winnie, son of Cornelius Winne, that said Julian, in September, 1878, had been arrested for a criminal offense upon a warrant issued by a justice of the peace, and after examination had been discharged, and that upon that examination the defendant, who is an attorney at law, appeared for the complainant.

Further facts appear in the opinion.

*James A. Lynes* for appellant. The essential element in the crime of robbery was, and still is, force or fear of immediate injury. (Barber's Crim. Treatise, 134, 136, 137; *The People* v. *Griffin*, 2 Barb. 427, 430; 2 City Hall Recorder, 31; 6 id. 86.) To constitute the offense, the menace or threat must be of a character to produce in a reasonable man some degree of alarm or bodily fear, and such alarm must be of a nature and extent to unsettle the mind upon which it operates and take away that free voluntary action which constitutes consent. (*Reg.* v. *Walton*, 9 Cox's C. C. 268; *Reg.* v. *Hendy*, 4 id. 243; 1 Whart. Crim. Law, § 851, note; 2 id., § 1664; *Regina* v. *Norton*, 8 Carr. & Payne, 671; *S. C.*, 34 Eng. Com. Law, 577;

*People* v. *McDaniel,* 1 Park. Cr. 198 ; *Lang* v. *Stall,* 12
Ga. 293.) The court erred in allowing the witness, Winnie,
to state conversations prior to the writing of the letters to
show the intent and motive with which the letters were written.
(Vols. 26 to 28 and 31 ; Wharton on Crim. Evidence, § 620 ;
1 Moody's Crown Cas. 134 ; 3 Cox's C. C. 547.) The finding
of the jury that the prisoner was guilty is not warranted or sus-
tained by the evidence, and it was the duty of the court to
direct a verdict of acquittal. (Code of Crim. Pro., § 410 ;
*Babcock* v. *People,* 15 Hun, 347 ; *People* v. *Bennett,*
49 N. Y. 137 ; *Duffy* v. *People,* 26 id. 588 ; *Heowell* v. *People,*
5 Hun, 620 ; affirmed, 69 N. Y. 607 ; 41 How. Pr, 179 ; 6 Cush.
629 ; 27 Hun, 105, 107.)

*Clarence L. Barber,* district attorney, for respondent.
Whether or not the letter amounts to a threat, etc., within
the words of the statute, is a question for the jury. (Ros-
coe's Cr. Ev. 953 ; 2 Bish. Cr. Pro. [3d ed.], § 1029 *a ;*
2 Whart. Cr. Law [8th ed.], § 1665.) The evidence sustains
an inference by the jury of a threat, the object of which was
"to accuse any person of a crime, * * to do any injury * *
or to expose or impute to any person any deformity or dis-
grace ?" (Code of Crim. Pro., § 254 ; *People* v. *Irving,* 95 N.
Y. 545 ; *Comm.* v. *Dorus,* 108 Mass. 488 ; Waterman's Dig. 586 ;
Roscoe's Cr. Ev. 953 ; *R.* v. *Girdwood,* 1 Leach, 142 ; 2 East's
P. C. 1121 ; Roscoe's Cr. Ev. 955 ; *R.* v. *Abgood,* 2 C. & P.
436 ; 12 Eng. Com. Law,　) Whether the son was guilty of any
crime or not is immaterial. (2 Bish. Cr. Law [7th ed.], § 1201 ;
Roscoe's Cr. Ev. 956.) To prove the intent and meaning,
other instances of like threats from the defendant to the same
person, or confessions of them, may be shown. (2 Bish. Cr.
Pro. [3d ed.], § 1029 ; Roscoe's Cr. Ev. 98 ; Wharton's Cr. Ev.,
§ 46 ; *Copperman* v. *People,* 56 N. Y. 591 ; *Miller* v. *Baker,*
66 id. 568.)

EARL, J. The indictment against the defendant was framed,
and the crime charged, under section 558 of the Penal Code.
That section, leaving out what is now immaterial, provides as

follows : " A person, who, knowing the contents thereof, and with intent by means thereof to extort or gain any money or other property  *  *  *  sends  *  *  *  any letter or writing threatening (1) to accuse any person of a crime  *  *  * or (4) to expose or impute to any person any deformity or disgrace, is punishable by imprisonment for not more than five .years." And section 561 of the same chapter provides that " it is immaterial whether a threat made as specified in this chapter is of things to be done or omitted by the offender, or by any other person."

To make out the crime specified in section 558, it is not needful for the prosecution to show that the threat was against the person to whom the letter was sent or addressed, or that the writer or sender of the letter was the one threatening to do the wrongful act. The crime may be committed by one who sends a letter conveying a threat of some other person to do the forbidden acts, provided he sends the letter for the unlawful purpose mentioned in the act. Nor is it needful to constitute the crime that the threat should inspire fear or, as claimed by the learned counsel for the defendant, that it should be calculated to produce terror. If the threat be of the kind mentioned in the statute, and be made or conveyed with the view and intent mentioned, the crime has been committed, however far the threat may have fallen short of its purpose. It would be quite foreign and immaterial for the court or jury to enter upon an inquiry as to the probable force or power of the threats. The statute defines the crime in plain language, and there is no occasion for limitations or qualifications which are not there found.

The statute cannot be evaded under the guise of friendship. No precise words are needed to convey a threat. It may be done by innuendo or suggestion. To ascertain whether a letter conveys a threat, all its language, together with the circumstances under which it was written, and the relations between the parties may be considered, and if it can be found that the purport and natural effect of the letter is to convey a threat, then the mere form of words is unimportant.

Here the defendant had been concerned in the prosecution of Julian Winnie before the justice. The letters purported to

have been written from the office of the district attorney, and he had previously said to Cornelius Winnie that he was deputy district attorney. He represents the danger of some movement to indict his son as imminent, and that he has it in his power to arrest the movement, and that the plan suggested will save him and his folks " some trouble and expense, as well as the stink, and show that a friend in the right place is worth something sometimes." Taking the whole letter, the inference is quite strong, if not irresistible, that either he, or some one else, had some intention of renewing the prosecution against the son by appearing before the grand jury. Unless the letters mean that they had no purpose whatever. It was upon that ground that the money was requested. The letters are fairly susceptible of the construction that they conveyed a threat that either he or some one else would proceed to procure an indictment against the son, and thus accuse him of crime and expose him and his relatives to disgrace. The trial judge, therefore, did not err in submitting the letters to the jury, for them to determine their meaning and effect.

It matters not that the son had been discharged upon the examination before the justice, as that discharge was no bar to a subsequent indictment and conviction for the crime charged, and certainly no bar to a subsequent accusation of the same crime. Nor does it matter that in fact no person was proceeding or threatening to indict the son, and that all the pretenses in that respect were in fact false. It is sufficient that the letters on their face convey the threat.

There was no error in receiving in evidence, and submitting to the jury, certain conversations had between the defendant and Cornelius Winnie prior to the sending of the letters, in which he made statements similar to those contained in the letters, and requested money to stop proceedings which he claimed were imminent to indict the son. Those conversations were material and proper as bearing upon the criminal intent of the defendant in writing the letters.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.