THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
                    *v.* MAX MINSKY, Appellant.

**Trial — witness — party may not be permitted to impeach his
own witness although disreputable and unsatisfactory — claim
of privilege sustained by court does not correct erroneous ruling
on admissibility of evidence.**

1. When the refusal of a witness to identify the defendant as the other
party to a conversation testified to by the witness is not positive but
equivocal and circumstances suggest that the conversation was with
defendant, the question as to whom his testimony refers is one of
fact for the jury.

2. A party should not be permitted to impeach his own witness.
After having unsuccessfully taken a chance to secure favorable testi-
mony, he may not attack the character of such witness and ask the
jury to infer the contrary of what has been sworn to, because the
falsity of the evidence is to be presumed when the character of the
witness is disclosed.

3. When a disreputable witness is called and frankly presented to
the jury as such, the party calling him represents him for the occasion
and the purposes of the trial as worthy of belief. In the search for
truth he may have to press the witness severely. But he must not
thereafter, when disappointed in the testimony given, attack the
credibility of the witness by asking questions tending solely to
show him to be unworthy of belief, and where the only effect of an
affirmative answer to a question asked by a party to his own witness
for such purpose will be to discredit the witness, the question is
objectionable. Error in this respect is not cured by permitting a
witness to refuse to answer on the ground that the answer would
disgrace him. Such ruling protects the witness but the result is as
prejudicial to the rights of the party as an affirmative answer.

*People* v. *Minsky*, 173 App. Div. 938, reversed.

(Argued June 5, 1919; decided July 15, 1919.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered
April 28, 1916, which affirmed a judgment of the Court of
General Sesrions of the Peace in the county of New
York rendered upon a verdict convicting the defendant
of the crime of murder in the second degree.

The facts, so far as material, are stated in the opinion.

*Karl W. Kirchwey* for appellant. Permitting the district attorney to impeach and cross-examine his own witness, Florence Horowitz, was reversible error. (*Brayman* v. *Grant*, 130 App. Div. 272; *People* v. *Dixon*, 118 App. Div. 593; *Lawrence* v. *Barker*, 5 Wend. 301; *Thompson* v. *Blanchard*, 4 N. Y. 303; *Bullard* v. *Pearsall*, 53 N. Y. 230; *Coulter* v. *A. M. U. Express Co.*, 56 N. Y. 585; *Sanchez* v. *People*, 22 N. Y. 147; *Morris* v. *Wells*, 7 N. Y. Supp. 61; *Tice* v. *Dromgoole*, 33 Hun, 365; *Sisson* v. *Conger*, 1 T. & C. 564; *Conklan* v. *M. S. Ry. Co.*, 40 Misc. Rep. 619.) The trial court erred in permitting evidence of transactions between the witness Florence Horowitz and a person other than the defendant to go to the jury. (*Kirby* v. *D. & H. C. Co.*, 20 App. Div. 473; *Barr* v. *Sofranski*, 130 App. Div. 783; *Voorhees* v. *Unger*, 151 App. Div. 35; *Hankinson* v. *Vantine*, 152 N. Y. 20; *Agate* v. *Richards*, 5 Bosw. 456; *Fink* v. *Manhattan R. R. Co.*, 15 Daly, 479; *Jackson* v. *King*, 5 Cow. 237; *Jackson* v. *Cody*, 9 Cow. 140; *Hatcher* v. *Rocheleau*, 18 N. Y. 86; *People* v. *Snyder*, 41 N. Y. 397; *People* v. *Smith*, 45 N. Y. 772; *Hoffman* v. *Met. Life Ins. Co.*, 135 App. Div. 739; 141 App. Div. 713; *Douler* v. *Prudential Ins. Co.*, 143 App. Div. 537; *Bloomingdale* v. *Keller*, 68 Misc. Rep. 337; *Matter of Kennedy*, 82 Misc. Rep. 214.)

*Edward Swann, District Attorney* (*Robert C. Taylor* of counsel), for respondent. The claim that the witness " Flo " was improperly impeached by the district attorney cannot be sustained. (*People* v. *Sherman*, 133 N. Y. 349; *People* v. *Sexton*, 187 N. Y. 495; *Bullard* v. *Pearsall*, 53 N. Y. 231; *People* v. *Kelly*, 113 N. Y. 647; *Vollkommer* v. *Cody*, 177 N. Y. 124; Wigm. on Ev. 1030, § 1904; *People* v. *De Martini*, 213 N. Y. 203; *People* v. *Taylor*, 3 N. Y. Cr. Rep. 297; 101 N. Y. 608; *People* v. *Laudiero*, 192 N. Y. 304.) " Flo's " testimony as to " Shuey's " conduct was properly admitted. (*Dolan Case*, 186 N. Y. 4; *Dunbar Const. Co. Case*, 215 N. Y. 416; *Bruno Case*, 220 N. Y. 702.)

POUND, J. Defendant, Max Minsky, also known as Max Harris and by the nickname Shuey, was indicted for murder in the first degree with Moe Horowitz, Louis Penitsky and Terry Davis for the killing of Max Levine. Defendant was tried separately and convicted of murder in the second degree. The judgment of conviction was unanimously affirmed by the Appellate Division and the only question before us is whether the trial court made erroneous rulings on the admissibility of evidence which were properly excepted to by the defendant.

In opening on behalf of the People, the assistant district attorney candidly said: " that outside of the doctor and the police officers and those of the district attorney's staff who are going to testify here, I do not believe there is a reputable witness in the case."

Levine was killed on the 12th day of April, 1913, in a small three-room flat occupied by the co-defendant Moe Horowitz and his wife Flo in the rear of a building at No. 207 East Fourteenth street. He was a young man, recently from Elmira Reformatory. The height of his offending seems to have been that he was ambitious to be tough and a leader of toughs and that he had turned his back on the friends who had been good to him when he came out of jail. He came to the flat on the night of the murder. The co-defendant Penitsky was there. A man named Perlmutter who was at the flat, hiding from arrest for a shooting up in Harlem, came in next. Then came this defendant with Horowitz and the co-defendant Davis. Perlmutter was the People's witness. He said that Levine took out a pistol and asked for some lead; Terry, Moe and defendant drew pistols and said they had plenty of lead and put up their pistols again; Levine attempted to fix his pistol. The meaning of this dramatic flourish is conjectural but the judicious Perlmutter says he then decided to leave the place. As he was leaving, three pistol shots were fired. Levine was killed as he was fixing his pistol and they all ran out. Perlmutter's

story is obviously incomplete. He says he saw the three, surrounding Levine, and saw Terry Davis put a bullet into Levine, but he gives no adequate explanation for the assault of the three men upon the dead man. One Wechsler was also there, but Perlmutter did not disclose that fact at first.

The defendant made a statement before the trial in which he denied all connection with the crime, but he admitted that he came to the place after the shooting and talked with Flo Horowitz and a girl called Nookie who had a dog. He said that the killing of Levine was not mentioned in the interview.

Then came Flo Horowitz as a witness for the People, and she testified that she saw a man known to her only by the name of Shuey, who was *not* the defendant, and the girl Nookie, on the sidewalk at the flat after the killing and that the Shuey she saw said and did various things from which a guilty knowledge of the crime might be inferred and which tended to corroborate Perlmutter's narrative. The witness was neither consistent nor wholly convincing in her denial that the Shuey she saw on this occasion was the defendant. During the course of her examination she said that she knew only one Shuey; that the Shuey she talked with was known as Max Harris and that she knew the defendant as Max Harris. She said she had never seen defendant before she saw him in the Tombs after his arrest and she also said that she knew him, but not to speak to, before she saw him in the Tombs.

The trial court received her evidence over defendant's objection and exception; submitted to the jury the question whether Perlmutter was an accomplice; and finally directed the jury to acquit if they believed that the Shuey referred to by her was not the defendant.

The evidence was competent in view of the statement of the defendant that he had talked with Flo Horowitz

7

after the killing and the witness's own equivocal denial of the identity of the defendant and the man of the same name that she saw. Shuey is a common nickname among these people, but the case for identity is much stronger than mere identity of name, on the one hand, against positive denial of identity on the other. The circumstances were for the jury to pass upon and it was for it to say whether the two Shueys were or were not identical.

The witness was, however, a necessary and material witness for the People and the defendant complains that the assistant district attorney was allowed to impeach her. The witness proved adverse, if not disappointing. The court, in the exercise of its discretion, properly allowed the district attorney to cross-examine her (*People v. Sexton*, 187 N. Y. 495, 509), athough it does not appear that he was surprised by her failure on the witness stand positively to identify her friend Shuey as the defendant. The testimony was adverse but perhaps not unexpectedly adverse. The district attorney put her on the stand as a hostile witness to get what he could from her. By so doing he did not necessarily present her as a witness of good moral character. The law does not limit a party to witnesses of good character, nor does it compel a party to conceal the bad record of his witnesses from the jury, to have it afterwards revealed by the opposing party with telling effect. Such a rule would be unfair alike to the party calling the witness and the jury. Men have been convicted of murder in the first degree by the evidence of admittedly dangerous and degenerate witnesses, law breakers and professional criminals. (*People v. Becker*, 215 N. Y. 126; 210 N. Y. 274.) But when a disreputable witness is called and frankly presented to the jury as such, the party calling him represents him for the occasion and the purposes of the trial as worthy of belief. In the search for truth he may have to press the witness severely. Even the best of men may be an

unwilling witness. But he must not thereafter attack the credibility of the witness by general character evidence tending solely to show him to be untruthful and unworthy of belief. Where the only effect of an affirmative answer to a question asked by a party to his own witness for such purpose will be to discredit the witness, the question is objectionable. (*Bullard* v. *Pearsall,* 53 N. Y. 230; *Pollock* v. *Pollock,* 71 N. Y. 137, 152.) In this case, the assistant district attorney presented this woman not as a reputable witness, generally speaking, but as one whose evidence might be believed. When he was disappointed, he not only cross-examined her sharply but also asked her if she was not at the time of the killing a prostitute; soliciting men on the street; having several venereal diseases. To those questions timely objection was made and overruled and exception taken. The court did not compel the witness to answer, and the witness did not answer because she said the answers would disgrace her.

The court erroneously permitted the assistant district attorney to ask these questions, not by way of introducing a willing witness with an unfortunate past, but for the purpose of discrediting his own witness. The error was not cured by permitting her to refuse to answer. The questions were objectionable and the objection should have been sustained. That was the right of the defendant. The privilege of the witness is solely for the protection of the witness. It may be claimed or waived as the witness sees fit and the party cannot complain. (*Gt. W. Turnpike Co.* v. *Loomis,* 32 N. Y. 127, 138.) To the defendant, the claim of privilege was as prejudicial as an affirmative answer would have been.

The district attorney put the witness on the stand with the power to destroy her standing for veracity if she spoke against him and to present her testimony as trustworthy if she spoke for him. A party should not be permitted, after having unsuccessfully taken a chance to secure favorable testimony, to attack his own

witness and ask the jury to infer the contrary of what has been sworn to, because the falsity of the evidence is to be presumed from the general character of the witness. A witness of bad character has enough to fear from the adverse party without being intimidated by the party calling him. The power to coerce a witness may as reasonably be expected to beget a lie as to force the truth from unwilling lips.

The jury may have been led to infer that because the People's witness was a bad woman, she saw defendant after Levine was killed, although she denied it. The error, therefore, went to the heart of the People's case. The People were not bound by her denial. They could, without impeaching the witness, ask the jury to infer that she did not tell the whole truth and nothing but the truth. They might have resorted to other proof if other proof was available.

The district attorney may not now say that he merely sought to show the character of the witness as a part of her history. (*People* v. *Taylor*, 36 Hun, 639; 101 N. Y. 608; opinion 3 N. Y. Crim. Rep. 297, 299.) He said in effect, and properly, when he called the woman: " this witness is not reputable, but she will now speak truly;" but in the end he shifted the emphasis and said in effect " she is depraved and unworthy of belief, and I now ask you not to believe her but to believe the contrary of her positive assertion." The purpose of the evidence and the order of the proof, rather than the evidence itself, condemned it.

The judgment should be reversed and a new trial granted.

HISCOCK, Ch. J., COLLIN and ANDREWS, JJ., concur; CUDDEBACK and CARDOZO, JJ., vote to affirm under section 542 of the Code of Criminal Procedure; McLAUGHLIN, J., not sitting.

Judgment reversed, etc.