RUFFALO, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 14—June 18, 1928.*

For the plaintiff in error there was a brief by *Wilbershide, Baumblatt & Weisman* of Racine, and oral argument by *Leonard P. Baumblatt* and *Jacob M. Weisman.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *L. D. Potter,* district attorney of Racine county, and *F. W. Nelson,* assistant district attorney, and oral argument by *Mr. Nelson.*

STEVENS, J.  ■  Shortly after midnight, when defendant Ruffalo, a watchman at a railroad crossing in Racine, was giving warning of the approach of a train, he was struck and knocked down by an automobile driven by Dennis Murphy which was approaching the crossing at that time.

The great weight of the evidence tends to establish the fact that, after defendant was struck, he went to his watchman's shanty and procured a revolver, and then proceeded to the farther side of the crossing where Mr. Murphy had stopped his car.  When Ruffalo reached the Murphy car he opened the car door, and calling Murphy a vile name said: "You try to kill me, and I kill you."  He thereupon raised the revolver above his head, brought it down, took deliberate aim at the body of Mr. Murphy and fired.  In all four shots were fired by defendant at Mr. Murphy while he was seated in his car and defendant was standing in the open door of the car. Mr. Murphy then got his car under way and left the scene of the shooting.  The defendant does not deny the firing of the shots.  But he asserts that he thought the gun was loaded with blank cartridges, and that he fired these shots to keep

Mr. Murphy from running away. But the fact is that the Murphy car was standing still, and that Mr. Murphy made no attempt to get away until after defendant began shooting at him.

A review of all the evidence satisfies the court that the defendant was guilty, and that he may consider himself fortunate that he was not found guilty of a more serious offense.

■ Defendant contends that a new trial must be granted because the jury rendered a compromise verdict. This contention is based on the fact that the jury wrote at the foot of their verdict: "We the jury recommend leniency." The affidavits of two jurors were presented in which they stated that they did not believe that the defendant was guilty of any more serious offense than simple assault; and that they agreed to the verdict on condition that the jury would recommend leniency. The case presents the question whether such affidavits of jurors can be considered by the court.

"The general rule is very ancient, and often reiterated, that the statements of the jurors will not be received to establish their own misconduct or to impeach their verdict. . . . The early idea was that of secrecy in their deliberations, and, further, the impropriety of receiving jurors' statements as to their mental processes, whether to impeach or support their verdict. . . . In some cases the rule is limited to things which transpire in the jury room or in court, but it will be found in most of those cases also limited to matters involved in reaching the verdict. . . . In line with the same idea are a number of decisions drawing a distinction between the proceedings involved in reaching and agreeing upon the verdict and the mere act of expressing it, either orally or in writing." *Wolfgram v. Schoepke*, 123 Wis. 19, 24, 25, 100 N. W. 1054.

The same rule is applied in criminal cases. "Affidavits of jurors, except as to matters outside the jury room or some

mistake in framing the verdict so as to report what was agreed upon, cannot be used as a basis for setting the verdict aside. Only within quite narrow limits can a juror impair his verdict by affidavit or anything he may say or do after having been discharged from the case. Under no circumstances can he be permitted to efficiently contradict it, as was attempted in this case, by confessing that he appreciated the effect thereof as rendered but did not, when he agreed thereto, believe it was right. . . . An affidavit to the effect that the verdict as reported is not as agreed upon and an affidavit directly impeaching the verdict, as that the juror united in delivering a particular verdict, but did so contrary to his best judgment, are quite different. The latter is not permissible." *Imperio v. State,* 153 Wis. 455, 460, 141 N. W. 241.

Defendant concedes that the rule for which he contends prevails in but few jurisdictions, but asserts that this court adopted this minority rule in *McBean v. State,* 83 Wis. 206, 210, 53 N. W. 497, when it cited with approval *Crawford v. State,* 2 Yerg. 60, 24 Am. Dec. 467. But this court did not adopt the rule of that case because that "decision goes much further than we are here asked to go."

The affidavits here in question do impeach the verdict. It appears from these affidavits that the verdict rendered was one to which the jurors who signed these affidavits agreed. No mistake was made in announcing the verdict. The verdict announced was the one actually agreed upon. The affidavits seek to impeach the verdict by stating the reasons that led these particular jurors to agree upon the verdict. If the findings of a jury can be set aside because of the reasons which some juror, under pressure by a disappointed suitor perhaps, may say led him to agree with his fellows, verdicts will ever rest upon a very insecure basis.

In *McBean v. State,* 83 Wis. 206, 210, 211, 53 N. W. 497, the conviction was set aside because the presiding judge

assured the jury in response to their inquiry that they could depend on the clemency of the court, if the defendant was found guilty. Such a promise "was well calculated to overcome reasonable doubts, and coerce an agreement for conviction." "The question put by the jury to the trial judge in the case at bar was, in and of itself, harmless. The error consists of the promise made by the trial judge to the jury, to the effect that, if they found McBean guilty, they might rely upon him to extend the clemency of the court to the prisoner."

The fact that the jury requested leniency does not warrant the conclusion that the verdict was a compromise verdict. *Niezorawski v. State,* 131 Wis. 166, 178, 111 N. W. 250. Even if there might be force to defendant's argument in a close and doubtful case, this is not such a case. It is-a case in which the guilt of the defendant has been as clearly and satisfactorily established as it was in *Tendrup v. State,* 193 Wis. 482, 486, 214 N. W. 356.

3. The court carefully and fully instructed the jury as to the burden of the State to establish beyond reasonable doubt that the defendant had the intent to do great bodily harm when he shot at Mr. Murphy. The court then told the jury "that persons of sound mind are presumed in the law to intend the natural, probable, and usual consequences of their acts intentionally done." Defendant concedes that this would have been a proper instruction had defendant known that the revolver was loaded with powder and ball. His assertion that this is an erroneous instruction is based on defendant's statement that he thought the revolver was loaded with blank cartridges. Even if the evidence warranted a finding that defendant thought there was nothing but blank cartridges in the revolver, we see no error in giving an instruction that persons of sound mind are presumed to intend the natural, probable, and usual consequences of shooting blank cartridges at a human being at such close range as that at which

defendant fired at Mr. Murphy. Even if this were an erroneous instruction, the case presents such convincing evidence of defendant's guilt that it would not constitute reversible error. Sec. 274.37, Stats.

The other errors alleged could not have so affected the substantial rights of the defendant as to warrant a reversal of the judgment.

*By the Court.*—Judgment affirmed.