CHAMBERLAIN and others, Plaintiffs in error, vs. THE STATE, Defendant in error.

*April 8—May 10, 1932.*

For the plaintiffs in error there was a brief by *J. W. Frenz* of Baraboo and *Frank H. Hanson* of Mauston, and oral argument by *Mr. Hanson.*

For the defendant in error there was a brief by *Clifford M. La Mar,* district attorney of Sauk county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. La Mar* and *Mr. Messerschmidt.*

OWEN, J. The information charged that the defendants, on the 4th day of September, 1931, did feloniously and maliciously conspire to place one Ruben H. Miller in a compromising situation with the defendant Mrs. Roger Kieth, and feloniously, maliciously, and falsely accuse said Ruben Miller of a crime or offense, with intent thereby to feloniously and unlawfully extort money from the said Ruben

Miller, and that pursuant to said conspiracy they did cause said Ruben Miller to be placed in a compromising situation with the said Mrs. Roger Kieth, and did unlawfully threaten to accuse the said Ruben Miller with a crime or offense unless said Ruben Miller pay defendants the sum of $600, contrary to sec. 348.40, Stats.

Sec. 340.45 provides that "Any person who shall, either verbally or by any written or printed communication, maliciously threaten to accuse another of any crime or offense, . . . with intent thereby to extort money or any pecuniary advantage whatever, . . . shall be punished."

The information plainly charges that the defendants conspired together to commit the offense denounced by sec. 340.45. The only error relied upon for reversal upon this appeal is that the verdict and judgment of guilty is not supported by the evidence.

The evidence shows that on the evening of September 3, 1931, one Ruben Miller was sitting in his car at a little place called Steuben, in Crawford county. The defendant Chamberlain, with whom Miller had a personal acquaintance, approached Miller and induced him to take him to Gotham, a little place on the road between Steuben and Reedsburg. Chamberlain told Miller that he had several thousand dollars hidden near a tree at Gotham and wanted to get it before some one stole it. He offered Miller $25 to take him to Gotham. Somewhere on the road before they arrived at Gotham, they stopped at an oil station to purchase some gas. Chamberlain pawned a watch chain and fob for five gallons of gas and two half pints of liquor. Miller became somewhat intoxicated and drove as directed by Chamberlain. They passed through Gotham and proceeded to a road-house conducted by the defendant Clarice Reme near Reedsburg, arriving there sometime between 12 and 2 o'clock a. m. Upon their arrival, there were present in the road-house the defendant Roger Kieth and his wife, the defendant Mrs.

Roger Kieth. There was also present another couple, but they do not figure in the case. Miller arrived in an intoxicated condition. Chamberlain ordered drinks, which were served by Miss Reme. During the course of the evening considerable drinking was indulged by all, and Miller became quite intoxicated. Chamberlain and Kieth left the room and went out in the back yard where they stayed for some time. Miller claims that they were fighting, while they claim that they were repairing an automobile. At any rate, their absence from the room left Miller with Miss Reme and Mrs. Kieth, the other couple having left. During this time Mrs. Kieth importuned Miller to take her to Baraboo. This request Miller flatly refused, stating that he was too drunk to drive, and that as soon as he sobered up he was going home. She then suggested that he take her to a hotel in Reedsburg. To this he assented and they went out to his car. Before Mrs. Kieth got in the car, however, she went out to where Kieth and Chamberlain were and indulged in conversation with them. Miller took her to a hotel in Reedsburg. Upon reaching the hotel, Miller, being very much in need of sleep, concluded that he would secure a room in the hotel and sober up before returning home. He preceded Mrs. Kieth into the office and registered "Mr. Ruben Miller." Mrs. Kieth then suggested that he register for her as "Mrs. Ruben Miller." This he did, and the proprietor of the hotel assigned them each a room. He took them up to the rooms, turned on the light in room 7, assigned that to Mrs. Kieth, and proceeded to take Miller to room 9. Mrs. Kieth, however, took a bottle of liquor from her bosom and suggested to Miller that they have "another drink," at the same time telling the proprietor that they wanted only one room. The proprietor left them together in the room. Miller sat down in a chair. Mrs. Kieth prepared a couple of drinks, which they consumed. After they had been there about a half an hour there was a rap on the door. Mrs. Kieth readily opened the door

and admitted a deputy sheriff and her husband, the defendant Roger Kieth. There was no scene between the Kieths, but the deputy sheriff immediately placed Miller under arrest. He took Miller downstairs, Mr. and Mrs. Kieth following them. Mr. and Mrs. Kieth were entirely friendly, and, when they reached the bottom of the stairs, withdrew to a sequestered portion of the hallway and indulged in conversation. Miller paid his bill at the hotel and proceeded on his way, when the deputy sheriff reminded him that he was under arrest and that he would take charge of his movements. They returned to the road-house, where there was talk of the payment of $600 by Miller to Kieth.

It seems that Miller stated that he had $600 in the bank. He was very much excited, was in a drunken condition, and wanted to get out of his plight. He asked Chamberlain to give Kieth $600, promising to repay Chamberlain. After much talk, Chamberlain gave Kieth a worthless check for $600, and Miss Reme and Chamberlain took Miller in Miss Reme's car and proceeded to Boscobel, where Miller claimed he had $600 in the bank, which they intended Miller should pay over to them. They arrived at Boscobel at about 8:30, and stopped in front of the bank. The bank did not open until 9 o'clock, and they all three sat in the car until the bank opened. When the bank opened, Miller got out of the car with the purpose of going into the bank, but he was intercepted by an acquaintance who took him to a garage and put him to sleep. Chamberlain saw no more of Miller that day. The next day, however, he proceeded to Miller's farm and Miller drove him off the farm. Chamberlain admits that on that day he saw and talked with one Bill Tucker and George Eugene at Steuben. His examination with reference to that conversation is as follows:

"*Q.* Did you state to George Eugene and Bill Tucker that day that you would like to have them go to Rube Miller and have him drop any action that he might have in this matter,

because if they didn't that you would all be in jail—did you make that statement or any statement in substance like that to Bill Tucker and George Eugene on the 5th day of September, 1931? Yes or no.  *A.* Well, there was a statement made.

"*Q.* I asked you whether you made that statement to them at that time or not, or anything in substance to that effect? *A.* I don't get that.

"*Q.* Did you make that statement to them at that time? *A.* I don't think I did.

"*Q.* Would you say that you didn't? *A.* I know how it was said.

"*Q.* Did you ask them to go to Miller, to see Miller? *A.* Yes.

"*Q.* And did you ask them to ask Miller to drop the matter or that you would all be in jail? *A.* I didn't say, 'all be in jail.'

"*Q.* Something to that effect? *A.* There was something said about that.

"*Q.* That was about what was said, wasn't it? *A.* That wasn't the way it was said.

"*Q.* That's about what was said, wasn't it? *A.* No, I won't say that; I will tell the truth about it if I can get a chance to explain."

An objection then interrupted any further testimony along this line. Neither Tucker nor Eugene was called as a witness, and neither did Chamberlain make any further reference to the incident by way of explanation or otherwise. However, it does show that Chamberlain was very much concerned as to what Miller might do.

Upon this record, we do not perceive even a close question upon the sufficiency of the evidence to sustain the conviction. It is very familiar doctrine that proof of conspiracy must rest in inferences drawn from circumstantial evidence. *Wachowski v. Lutz,* 184 Wis. 584, 201 N. W. 234; *Lange v. Heckel,* 171 Wis. 59, 175 N. W. 788. As was said in *Patnode v. Westenhaver,* 114 Wis. 460, 474, 90 N. W. 467:

"A mere tacit understanding between conspirators to work to a common purpose is all that is essential to a guilty, ac-

tionable combination. . . . Mutuality in the undertaking may be secured without any express agreement and without a spoken or written word between the conspirators or a meeting of the members of the combine, or their, even, all knowing each other; or the precise thing to be accomplished or plans for its accomplishment, either in a general way or in detail, being distinctly stated by any member of the combine to any other member. If there is a meeting of minds, brought about in any way, to accomplish the common purpose, the essentials of a guilty combination are all satisfied."

We think the evidence in this case not only justifies the inference of guilt, but that it would require a most trusting and credulous disposition to place any other construction upon it. There is not one syllable of evidence in the case to indicate that Miller at any time entertained any amorous desires or intentions towards Mrs. Kieth, nor that he was at any time the leading actor in the events of the evening. Nor is there any reason to believe that Mrs. Kieth was motivated by the personal or social appeals of Miller. Miller was an uncouth, drunken farmer, dressed in overalls. According to the trial judge, "Mrs. Kieth was a young woman, fine looking, well dressed, newly marcelled, with those attractions of youth that only youth has." Kieth was not at all outraged when he discovered his wife and Miller in the hotel. He evidently found an expected and gratifying situation. Husband and wife walked out of the room and down the stairs with friendly attitude, and counseled together in the hall below. They repaired again to the road-house, where the talk was all of money and where the services of Miss Reme and Chamberlain were readily extended to make sure that the money was procured before Miller escaped from their influence. After Miller and Mrs. Kieth left the road-house, Roger Kieth went direct to the home of the deputy sheriff and they proceeded promptly to the exact hotel where Mrs. Kieth and Miller had put up, passing another on the way at which they did not stop or make inquiry. The deputy sheriff

is not a party defendant, but his conduct does not indicate that a vindication of the law was the motive for his connection with the transaction. He did not discover Miller in a compromising position with Mrs. Kieth, nor did he see anything to indicate that there had been any intimacies between them. Nevertheless he assumed to arrest him and keep him in custody until he had made his peace with the Kieths. Much more might be said in the way of analysis of this evidence, but it is believed that it has been discussed sufficiently to indicate its support of the verdict.

*By the Court.*—Judgment affirmed.