O'NEIL, Plaintiff in error, vs. THE STATE, Defendant in error.
KLINK, Plaintiff in error, vs. SAME, Defendant in error.

*January 10—April 15; 1941.*

For the plaintiff in error O'Neil there were briefs by *Grady & Fairchild* and *James J. Burke,* all of Portage, and oral argument by *Mr. Daniel H. Grady* and *Mr. Burke.*

For the plaintiff in error Klink there were briefs by *Roberts, Roe & Boardman* of Madison, and oral argument by *W. Wade Boardman.*

For the defendant in error there were briefs by the *Attorney General, William A. Platz,* assistant attorney general, and *Clarence Traeger,* district attorney of Dodge county, and oral argument by *Mr. Platz* and *Mr. Traeger.*

The following opinion was filed Febuary 4, 1941:

FRITZ, J.  The principal assignments of error relied upon by the plaintiffs in error, Frank L. O'Neil and Eugene Klink (hereinafter called "defendants"), are that the court erred in denying their motions to direct verdicts acquitting and discharging them at the close of the trial, and to set aside the verdicts of conviction and order their discharge or, in the alternative, grant a new trial.  In support of these assignments of error it is the defendants' contention that neither of them made any threat of a criminal prosecution and that O'Neil did not demand or want the payment of any money; that the testimony to the contrary by Clara Lehman and her husband, Henry Lehman, is so contradictory and incredible as to be unworthy of belief; and that each of the defendants was entitled to a directed verdict because the evidence shows conclusively that he was not guilty of extortion under sec. 340.45, Stats.

Although there are many conflicts in other respects in the testimony, the following matters were established beyond dispute.  Clara Lehman and her husband, Henry Lehman, resided on premises adjoining the residence in which O'Neil and his wife resided in the city of Juneau.  In February, 1938, Clara Lehman sent an anonymous letter to Nicholas Klink, the superintendent of the Dodge county asylum and home,

and the father of the defendant Eugene Klink, who managed the Dodge county farm under his father's supervision. In the letter there were statements which could be construed to charge that property belonging to the county had been misappropriated by or with the knowledge of Eugene Klink and that O'Neil had been somewhat benefited thereby. As the trial court considered these statements libelous *per se* as against Klink and O'Neil, the state was not permitted to introduce proof to show the truth thereof; and as these rulings were in accord with O'Neil's and Klink's contentions, it suffices here to assume that the statements were so libelous. However, it may be noted that as the communication was sent by Clara Lehman to only Nicholas Klink, who was the superintendent of the county farm at which the misappropriations are charged to have occurred, it may have been privileged to such an extent that the publication thereof to Nicholas Klink only may not have rendered her liable in a civil action for libel. *Werner v. Ascher,* 86 Wis. 349, 351, 56 N. W. 869; *Wilson v. Noonan,* 35 Wis. 321, 349. Upon receiving the letter, Nicholas Klink gave it to the defendant Eugene Klink, who showed it to O'Neil, and arranged with the latter's consent to employ private detectives to discover the author of the letter. The detectives traced it to Clara Lehman, and obtained from her a written confession admitting that she sent that letter. Thereupon Eugene Klink, with O'Neil's consent, consulted Eugene Clifford, an attorney at law, in regard to the matter, and left the letter and the confession with him. Clifford had a conference in relation thereto with Clara Lehman at his office, and then arranged for another conference there on April 22, 1938, at which O'Neil and his wife, and Klink and his wife were also present. Two days before that meeting Klink examined records at the courthouse to find out about the assets belonging to Clara Lehman and her husband. At the conference on April 22, 1938, Clara Lehman was induced to say that she would personally raise and pay $700 or $800

to defray expenses which Klink claimed he had incurred in the investigation of the matter. Her husband was not asked to attend that conference because she did not want him to know about the letter. Thereafter four conferences were held at Clifford's office between all of the above-mentioned persons, including Henry Lehman. In the course of these conferences the amounts requested of Clara Lehman were increased from $700 or $800 to $1,200 and finally to $1,400 at the third conference. The latter amount was paid at the next conference by a check issued by Henry Lehman and mutual releases of all claims against each other were then signed and delivered by and between Clara Lehman on her part, and Klink and his wife on their part, and by Clara Lehman on her part and O'Neil and his wife on their part. The release given by the O'Neils provided for the payment of $200 to O'Neil, and the amount paid for the release given by the Klinks was $1,200 to Klink. Of this amount Klink paid to Clifford $150 as attorney's fees, and the reasonableness thereof has not been questioned.

The principal controversies in relation to the evidence are whether there is sufficient credible evidence to establish beyond a reasonable doubt that the defendants maliciously threatened to accuse Clara Lehman of criminal libel with the intent to extort money; whether O'Neil had personally demanded the payment of money by Clara Lehman; and whether Klink and O'Neil, acting together with their respective wives, had, by maliciously threatening to so accuse Clara Lehman, put her in fear of being prosecuted or whether she thought of that by herself. She and also her husband testified repeatedly and at considerable length, but with some conflicts in their testimony, that in the course of the conferences Klink and his wife, and also O'Neil and his wife, had called her a criminal, threatened her with a warrant for criminal libel, said that she could be sent to Taycheedah, and demanded the payment of "money and plenty of it." She testified that when she offered, at the first conference, to pay Klink's expenses for investigating who

wrote the letter, he refused her offer, and when she said that she supposed she would have to disgrace her family and go to Taycheedah, the others replied that was not the question; that they wanted money and plenty of it; that O'Neil and his wife and Klink all told her that they did not want to send her to Taycheedah, that they wanted money; that O'Neil came up and put his fist in her face and said, "We got you just where we want you now, you are nothing but a criminal and we are going to hold you for that;" that Mrs. O'Neil said that she (Mrs. Lehman) would go to Taycheedah where she belonged; and that they now had her for a criminal and would take out a criminal warrant against her and it would cost her husband plenty. There was also testimony by Henry Lehman that he was willing to pay the $800 which Klink said he wanted for detectives, but Lehman wanted an itemized statement of what the money was going for and Klink said that he would not see a thing, all he was to do was to pay; that just prior to the last conference at which the settlement was concluded, Klink came to Lehman's office and told him that he would give him just twenty-four hours to pay or he would take out a warrant and have his wife arrested; that the reason he paid the $1,400 was that he did not want her to go to jail and he did not want the publicity to ruin his business. There was testimony by Klink that Mrs. O'Neil was very angry at the first meeting; that O'Neil knew definitely before he left Clifford's office what the purpose of that meeting was; and that when Clifford read something about a driveway from an abstract of the title which O'Neil had brought to the meeting, O'Neil said his part would be that he would want the driveway, and also said Mrs. Lehman was a criminal and this matter had to be settled or they were going to take out a warrant to arrest her.

On the other hand, O'Neil and Klink, and their wives, and also Clifford denied in their testimony that O'Neil ever demanded the payment of money or that he or Klink or their wives had threatened to have a criminal warrant issued against

Clara Lehman or to prosecute her unless payment was made; and they corroborated Clifford's testimony that he told Mrs. Lehman "We must forget about Taycheedah or else we get nowhere with this settlement." Some of them also testified that up to the time when the $1,200 figure was mentioned O'Neil had not been offered anything; that at this meeting O'Neil went to Henry Lehman and said he did not want anything except the friendship of his neighbors, and Lehman replied, "I don't want to have anything to do with you. I don't want you to ever speak to me again;" and that O'Neil then said to Clifford, "I am not attending any further meetings, . . . whatever settlement of this case you make will be satisfactory to me." Clifford testified that he then called O'Neil into the next room and said, "You should have some compensation, you are entitled to something. Will $200 be satisfactory," and O'Neil replied, "Yes;" and that the O'Neils and the Klinks then left the office.

No useful purpose will be served by a more extended statement as to the evidence. It suffices to note that there was additional testimony introduced by the state, as well as the defense, in relation to facts and circumstances which can be considered to support or corroborate their respective contentions. After all, the conflicts in the evidence and the inferences which could be reasonably drawn therefrom resulted in but questions for the jurors, and their determination thereof depended largely upon their conclusions in relation to the credibility of the various witnesses, and the weight of their testimony. A review of the evidence with these matters in mind compels the conclusion that if the jurors believed that certain testimony upon which the state relied was credible, there was sufficient evidence to warrant the jurors in being satisfied beyond a reasonable doubt that O'Neil, as well as Klink, maliciously and with the intent to thereby extort money threatened to accuse Clara Lehman of criminal libel and demanded the payment of money; that they finally succeeded by

means of those threats and demands in prodding the Lehmans into paying the substantial sum of $1,400 to avoid the accusation; and that by reason thereof O'Neil and Klink were guilty of violating sec. 340.45, Stats. Although Clifford, upon being called as a witness by the state, unequivocally denied that Mrs. Lehman was threatened with a criminal prosecution, and likewise contradicted in some other respects the testimony given by Henry and Clara Lehman, the state is not bound by his testimony or otherwise precluded thereby, as defendants contend, from relying upon the testimony given by Henry and Clara Lehman to sustain the verdict finding the defendants guilty. The decision in *Jackson v. State,* 12 Okla. Cr. 446, 158 Pac. 292, upon which defendants rely is contrary to the rule which is generally considered to prevail in criminal as well as civil cases. As the court said in *State v. Guilfoyle,* 109 Conn. 124, 133, 145 Atl. 761, 765,—

"When the evidence of different witnesses introduced by the same party is contradictory, the trier has a right to believe and accept that evidence which it finds to be most credible under all the circumstances. . . . The operation of this principle is particularly appropriate and salutary in a criminal case where the duty of the representative of the state dictates that the testimony of every available witness tending to aid in ascertaining the truth . . . be laid before the trial court, irrespective of whether it be consistent with the contentions of the prosecution."

See also *People v. Minsky,* 227 N. Y. 94, 124 N. E. 126; *Oldham v. State,* 52 Tex. Cr. 516, 108 S. W. 667, 669; *State v. Coolidge,* 106 Vt. 183, 171 Atl. 244, 247; *Commonwealth v. Eakin,* 92 Pa. Super. 381, 383; 3 Wigmore, Evidence (3d ed.), § 907; 2 Wharton, Criminal Evidence (11th ed.), pp. 1522, 1523.

It is contended on behalf of the defendants that they had the right to state to Mrs. Lehman that criminal proceedings would be instituted against her because of the libelous letter if she did not pay the amount demanded by them as their

damages. In this connection it is argued that because criminal libel is but a misdemeanor, inasmuch as it is punishable by imprisonment in but the county jail (sec. 348.41, Stats.), and as sec. 355.06, Stats., authorizes the discharge of a defendant in a prosecution for a misdemeanor if the injured party appears in court and acknowledges satisfaction, the demand by such party for the payment of damages in satisfaction of the injury caused by the wrongdoing which constitutes but a misdemeanor cannot be held to constitute extortion. Although it is true that a person so injured has the right in demanding payment for the damages caused by the wrongdoer's misconduct to state to him that a criminal prosecution will be instituted against him for the misconduct if the damages are not paid, it does not follow that it is lawful for the injured person to maliciously threaten to accuse the wrongdoer of the crime with the intent thereby to extort money from him. The belief on the part of the injured person that he has a right to recover damages when he demands payment thereof in connection with stating that he will prosecute the wrongdoer if he fails to pay, does not necessarily constitute a defense to a charge of extortion under sec. 340.45, Stats. There is still the crucial issue as to whether the prosecution was threatened maliciously with the intent to extort money from the wrongdoer instead of the matter of a prosecution being merely mentioned incidentally in seeking to obtain a settlement by the payment of reasonable compensation for the damage sustained. As the court said in *State v. Bruce,* 24 Me. 71, 73, in relation to a prosecution under a statute which was substantially like sec. 340.45, Wis. Stats.,—

"A person whose property has been stolen cannot claim the right to punish the thief himself without process of law, and to make him compensate him for the loss of his property by maliciously threatening to accuse him of the offense, or to do an injury to his person or property, with intent to extort property from him. A threat made by one, whose goods had been stolen, that he would prosecute the supposed thief for the

offense, if there were grounds to suspect him to be guilty, could not be considered as made maliciously and with intent to extort property, unless there were other proofs of malice and intended extortion. Nor do the instructions so state. The testimony to prove the malice and intended extortion is not presented; and it must be presumed to have been sufficient and satisfactory, especially after the defendant has been found guilty by two juries."

To the same effect are statements by the court in *Commonwealth v. Coolidge,* 128 Mass. 55, 58, 59, which was a prosecution for extortion in violation of a statute likewise similar to sec. 340.45, Wis. Stats. In approving the refusal to give an instruction requested by the defendant, the court said,—

"The first instruction asked, that the defendant must have maliciously intended to obtain that which in justice and equity he knew he had no right to receive, and the other, which differs only in form from that, that the defendant was not guilty if he believed that Chapin actually owed him, could not properly have been given without qualification; and the language of the presiding judge was entirely accurate when he said that the law did not authorize the collection of just debts by the malicious threatening to accuse the debtor of a crime."

In *People v. Beggs,* 178 Cal. 79, 82, 172 Pac. 152, the court, in sustaining a conviction for extortion, approved an instruction that it was the duty of the jury "to convict the defendant, even though you should also find that he believed that Da Rosa was guilty of the theft of Steining's goods in an amount either less than, equal to, or greater than any sum of money obtained from Da Rosa." In the course of the opinion the court said (p. 84):

"In reading section 518 with sections 519, 523, and 650, we cannot escape the conclusion that, assuming Da Rosa had in fact stolen goods of the value of $2,000 from Steining, the threats made by defendant to prosecute Da Rosa therefor unless he paid the value of said goods, which sum of $2,000

the latter, by reason of fear induced by such threat, paid, constitutes the crime of extortion. It is the means employed which the law denounces, and though the purpose may be to collect a just indebtedness arising from and created by the criminal act for which the threat is to prosecute the wrongdoer, it is nevertheless within the statutory inhibition. The law does not contemplate the use of criminal process as a means of collecting a debt. To invoke such process for the purpose named is, as held by all authorities, contrary to public policy."

To the same effect see *Slater v. Taylor,* 31 App. D. C. 100, 18 L. R. A. (N. S.) 77; *In re Sherin,* 27 S. D. 232, 130 N. W. 761, 766; and also *Stockman v. State,* 236 Wis. 27, 30, 293 N. W. 923, in which we said, in reviewing a judgment upon a conviction in a prosecution under sec. 340.45, Stats., "The question was whether Mrs. Klemp sought to settle a claim for civil damages which she in good faith supposed she had against Wolfe or whether she extorted money under threat of criminal prosecution." It follows that as there was testimony which warranted the jury in being satisfied beyond a reasonable doubt that the defendants Klink and O'Neil were actuated by malice in threatening to accuse Clara Lehman of criminal libel if she did not pay the money demanded of her to avoid the accusation, and that such threats were so made by them with intent to extort money, the fact that they may have had a valid civil claim for damages did not constitute a defense. And for the same reason, it also follows that the court did not err in denying defendants' request to instruct the jury that "the defendants had a right to demand money of Mrs. Lehman in settlement of their claim, and to tell her that if she did not pay damages, they would institute criminal proceedings against her." To render that correct and applicable as an instruction, it should have been stated that defendants had such right if in making their demand and threat they were not acting so maliciously with the intent to thereby extort money. *Commonwealth v. Coolidge, supra; People v. Beggs, supra; State v. Bruce, supra; Slater v. Taylor, supra.* Furthermore,

it is not necessary in order to sustain a conviction under sec. 340.45, Stats., for the state to establish, as defendants contend, that the victim's mind was so influenced by the threat in question that he acted under duress and that the money was actually obtained thereby, instead of being paid because of some other motive which influenced him; such as the desire, which defendants claim existed on the part of the Lehmans, to avoid publicity and shame to save their reputation, because of which Mr. Lehman was willing to pay before she was ever threatened. As the court said in *Commonwealth v. Corcoran,* 252 Mass. 465, 483, 148 N. E. 123,—

"The gist of the offense described in the statute is the attempt to extort money. *Commonwealth v. Goodwin,* 122 Mass. 19, 33. If the threat be of the kind referred to in the statute, and is made with the intent thereby to extort money, or with the intent to accomplish any of the other objects mentioned therein, the crime has been committed. The language is explicit and is not subject to any exceptions or qualifications. The legislature did not make the commission of the offense dependent upon the state of mind of the person threatened, and there is no occasion for reading into the statute qualifications not there found. If it had been intended that to constitute the offense the person threatened was intimidated or must have understood and appreciated the fact that he was so threatened with the intent to extort money from him, or to accomplish any other purpose set forth in the statute, it is a rational inference that it would have been so declared. *People v. Thompson,* 97 N. Y. 313, 318. See also *State v. Bruce,* 24 Maine, 71."

Likewise in point is the statement in *People v. Thompson, supra* (p. 318):

"Nor is it needful to constitute the crime that the threat should inspire fear or . . . that it should be calculated to produce terror. If the threat be of the kind mentioned in the statute, and be made or conveyed with the view and intent mentioned, the crime has been committed, however far the threat may have fallen short of its purpose. It would be quite

foreign and immaterial for the court or jury to enter upon an inquiry as to the probable force or power of the threats."

See also *State v. Bruce, supra.* As the conclusions thus stated in *Commonwealth v. Corcoran, supra,* and *People v. Thompson, supra,* are in accord with the evident purpose under the provisions of such statutes as sec. 340.45, Stats., to prohibit the malicious use of such threats in an attempt to so extort money, and as there is nothing in these provisions which can be deemed to make the actual obtaining of money an essential element of the crime, the decisions under statutes requiring that as an essential element are not in point.

The jury's recommendation of "mercy" for O'Neil and "leniency" for Klink in connection with the verdict finding each guilty does not necessarily indicate, as is contended on behalf of O'Neil, that there was but a compromise verdict or that the jury was not satisfied of his guilt beyond a reasonable doubt. It is more probable that the recommendation was made because of the defendants' good reputations as law-abiding citizens in the past; but at all events it does not vitiate or impair the verdict. (*Niezorawski v. State,* 131 Wis. 166, 178, 111 N. W. 250; *Tendrup v. State,* 193 Wis. 482, 486, 214 N. W. 356; *Ruffalo v. State,* 196 Wis. 446, 220 N. W. 190).

It is also contended on behalf of O'Neil (1) that the court erred in admitting as evidence against him the testimony given by his wife and also Klink and his wife in relation to the conversations between the parties at the several conferences and which was received on the theory that there was a conspiracy between O'Neil and these witnesses; and (2) that if there was evidence as to the existence of such a conspiracy, O'Neil had withdrawn from any possible connection with it before the settlement was concluded and therefore cannot be convicted of the crime of extortion. Neither of these contentions can be sustained. It is well established that,—

"A mere tacit understanding between conspirators to work to a common purpose is all that is essential to a guilty action-

able combination. . . . Mutuality in the undertaking may be secured without any express agreement and without a spoken or written word between the conspirators or a meeting of the members of the combine, or their, even, all knowing each other; or the precise thing to be accomplished or plans for its accomplishment, either in a general way or in detail, being distinctly stated by any member of the combine to any other member. If there is a meeting of minds, brought about in any way, to accomplish the common purpose, the essentials of a guilty combination are all satisfied." *Patnode v. Westenhaver,* 114 Wis. 460, 474, 90 N. W. 467; *Chamberlain v. State,* 208 Wis. 264, 268, 242 N. W. 492.

In the case at bar there was sufficient evidence to admit of finding that a conspiracy existed by reason of a tacit understanding between Klink and O'Neil and their wives to extort money from Mrs. Lehman, and it is well established that one who tacitly consents to the object of a conspiracy and goes along with the other conspirators is guilty even though he intends to take no active part in the crime but stands by while they put the conspiracy into effect. *Holtz v. State,* 76 Wis. 99, 107, 108, 44 N. W. 1107. Under these rules the court, as well as the jury, could find under the evidence herein that O'Neil continued as a member of the conspiracy, as a matter of law, even if he had not actively participated in making the threats of extortion which the evidence admits of finding that he made. Moreover, as the testimony given by Mrs. O'Neil and Klink and his wife was in relation to conversations carried on in O'Neil's presence at the conferences which resulted in ultimately obtaining the money demanded, the conversations testified to by them were part of the *res gestæ.* Consequently, their testimony in relation thereto was admissible on that ground and continued to be evidence against O'Neil notwithstanding his claim that he stated at a later conference that he did not want any money and only wanted the friendship of his neighbors. Whether he did so state is in dispute under the evidence. But as it is undisputed that he accepted part of the

proceeds of the alleged conspiracy, there remained in issue the question as to whether he did in fact withdraw therefrom. The fact that no conspiracy was charged in the information is immaterial in passing upon the admissibility of the testimony in relation to statements made by the conspirators. In order to consider one conspirator responsible for the acts and declarations of his coconspirators so as to render proof thereof admissible against each of them, it is not necessary that the conspiracy be charged in the information, if it appears from the evidence received on the trial that there was concerted action between them (*State v. Meating*, 202 Wis. 47, 53, 231 N. W. 263) ; and it is likewise not necessary that all of the conspirators be on trial (*Weisenbach v. State*, 138 Wis. 152, 119 N. W. 843).

Neither was the state obliged, because of the existence of a conspiracy, to institute a prosecution under sec. 343.681, Stats., instead of prosecuting the defendants for their violation of sec. 340.45, Stats. If the object of the conspiracy was the extortion of money in violation of sec. 340.45, Stats., the prosecution can be maintained thereunder even though a conspiracy for that purpose existed between them. *Chamberlain v. State, supra.* Errors are also assigned in relation to some other instructions given by the court, and to instructions requested but denied by the court. Upon due consideration of these assignments of error we find no prejudicial error in any respect.

*By the Court.*—(St. No. 15)    Judgment affirmed.
*By the Court.*—(St. No. 16)    Judgment affirmed.

WICKHEM, J., took no part.

A motion for a rehearing was denied, without costs, on April 15, 1941.