STATE, Respondent, v. WICKSTROM, Appellant.

*September 8—October 3, 1961.*

For the appellant there was a brief and oral argument by *Elizabeth Hawkes* of Washburn.

For the respondent the cause was argued by *William A. Platz,* assistant attorney general, with whom on the brief were *John W. Reynolds,* attorney general, and *Robert N. Ledin,* district attorney of Bayfield county.

HALLOWS, J. The defendant-appellant raises three issues: (1) Should the trial court have granted his motion to dismiss at the end of plaintiff's case; (2) does the record support the verdict; and (3) should the trial court have granted a new trial?

Briefly, the evidence showed that about 1 p. m. on Sunday, July 27, 1958, the defendant, while driving his car on U. S. Highway 2 about three miles west of the city of Ashland, suddenly swerved to his left and struck the oncoming car of Walter Warner in the north lane of the highway. Warner died as a result of the collision. The defendant, who was thirty-three years of age and a nightworker, arose about 1:30 on the Saturday afternoon of July 26th. That evening he spent in the company of a widow and another couple in a tavern until closing time, having approximately eight beers and then proceeded to a restaurant. After leaving there sometime after 2 a. m., the defendant and his companion rode around in her car and finally parked behind Wickstrom's car on the outskirts of Washburn. About 5:30 in the morning, one Mabbatt came along seeking help for his disabled car. After unsuccessfully attempting by tele-

phone to get road service, the defendant agreed to use his car to tow Mabbatt to Superior, some 70 miles away for $10. They left Washburn around 5:30 or 6 a. m., and the towing was done at a speed of about 30 to 40 miles an hour. On this trip, defendant was accompanied by a friend named Larson whom he found in his car and who seems to have been drunk most of the time. Upon arriving at Superior, defendant, with the $10, purchased gasoline, gave Larson a dollar, and started back for Washburn. The defendant and Larson stopped at a tavern in Brule and again at an eating place and tavern at the intersection of Highways 2 and 63, some five or six miles west of the place of the accident. It is not clear just when defendant left Superior or how long they stayed in the two taverns.

Mrs. Warner, the wife of the deceased, testified that as they were proceeding westerly she saw the defendant's car approaching them, not in any erratic manner, but when it was about 60 feet away all at once it crossed the center line at a high rate of speed and struck them head on. The Warner car was going 50 miles an hour at the time. Defendant testified Warner's car seemed to start over the center line of the road as he approached it and Warner's head appeared to be slumped down on his chest. He swerved his car the other way to avoid hitting Warner but could not say exactly when he swerved or how many feet the Warner car was away. He also testified, in answer to the question of why he swerved into Warner's lane to miss him, "If he was going in mine, I might as well go in his."

Defendant argues his motion for dismissal at the close of plaintiff's case should have been granted as there was not sufficient evidence at that time to submit the case to the jury. It is true, not a strong case was put in but there was enough evidence for both issues to go to the jury. After the denial of the motion, the defendant put in his case. It

has generally been held when a court has the power to direct an acquittal or dismissal of a charge against the accused and has refused to direct a verdict of acquittal at the close of the prosecution's case, the introduction of evidence by the defendant, if the entire evidence is sufficient to sustain a conviction, waives the motion to direct. *Wood v. Campbell* (1911), 28 S. D. 197, 132 N. W. 785; 2 Wharton, Criminal Evidence (11th ed.), p. 1521, sec. 882. See *State v. Coates* (1952), 262 Wis. 469, 55 N. W. (2d) 353 (venue); Anno. Directing Acquittal, 17 A. L. R. 925. No motion to dismiss was made at the close of all the testimony and the motion for a new trial did not include as a ground of error the submission of either or both counts to the jury. At the time of the submission of the case to the jury, the evidence presented a stronger jury question than it did at the close of the prosecution's case. There is no merit in the hindsight argument that because the jury acquitted the defendant on the second count, the evidence did not present a jury question and its submission necessarily placed an unfair and prejudicial burden on the defendant.

The second question is whether the record supports the verdict that defendant was guilty of a high degree of negligence. The defendant submits his cause on the definition of a high degree of negligence as set forth in *State ex rel. Zent v. Yanny* (1943), 244 Wis. 342, 12 N. W. (2d) 45, and argues there is an insufficiency of evidence. This argument is based on the acceptance of defendant's version of crossing the center line to avoid the oncoming Warner car. In view of the testimony of Mrs. Warner and the physical position of the cars after the collision, it was a question for the jury to resolve whether the Warner car crossed the line. The jury did not believe the defendant's version. Certainly driving one's car on the wrong side of the road in the path of oncoming traffic is ordinary negligence and a violation of secs. 346.05 and 346.06, Stats. The question, under

the circumstances of this case, is whether such driving constitutes a high degree of negligence. In *Bussard v. State* (1939), 233 Wis. 11, 288 N. W. 187, this court reversed a conviction of manslaughter in the fourth degree under sec. 340.26, Stats. 1939, which included gross negligence. There, the defendant started his automobile after stopping for a stop light at an intersection, increased his speed without observing traffic in front of him, failed to observe an automobile being pushed by several persons, and struck the pushed car while talking to a companion. These facts were held to be insufficient to establish gross negligence, but the court stated they indicated strongly that the defendant was negligent in a high degree.

After the *Bussard Case,* sec. 340.271 (2), Stats., was enacted and was on the statute books from 1941 to 1953. That section made it a crime of negligent homicide for causing the death of a person by the operation of a vehicle at an excessive rate of speed or in a careless, reckless, or negligent manner amounting to a high degree of negligence but not wilfully and wantonly. The constitutionality of this section, because of a lack of definition of high degree of negligence, was under consideration in the *Yanny Case.* The constitutionality of the statute was upheld, the court saying a jury could determine what constituted a high degree of negligence and such determination was no more difficult than determining slight negligence or comparing negligence under the comparative-negligence section (sec. 331.045, Stats.). The court then defined a high degree of negligence as follows (p. 347) :

"It is considered that the negligence requisite for a conviction under sec. 340.271 (2), Stats., is substantially and appreciably higher in magnitude than ordinary negligence. It is negligence of an aggravated character. It is great negligence. It represents indifference to legal duty. It is conduct that not only creates unreasonable risk of bodily harm to

another, but also involves a high degree of probability that substantial harm will result to such other person. In other words, the culpability which characterizes all negligence is magnified to a higher degree as compared with that present in ordinary negligence. On the other hand, it is something less than wilful and wanton conduct which, by the law of this state, is the virtual equivalent of intentional wrong."

Sec. 940.08, Stats., under which the defendant was charged and convicted, is part of the Criminal Code of this state, enacted in 1955 and contains a definition of high degree of negligence.[1] This definition includes ordinary negligence magnified or aggravated because of an act which the person should have realized would create an unreasonable risk and high probability of death or great bodily harm to another. The risk must be unreasonable and the probability high or greater than in ordinary negligence but not so great as to constitute wilful and wanton conduct characterizing gross negligence. This concept is the same as expressed in the *Yanny Case*. Gross negligence in the criminal law is included in homicide by reckless conduct. See sec. 940.06 (1) and (2).

Taking into consideration the circumstances under which the defendant was driving his car, the jury was entitled to find the defendant should have realized that crossing into the lane of an oncoming car 60 feet away, traveling 50 miles an hour, created a situation of unreasonable risk and high probability of death or great bodily harm to another and

---

[1] "940.08 HOMICIDE BY NEGLIGENT USE OF VEHICLE OR WEAPON. (1) Whoever causes the death of another human being by a high degree of negligence in the operation or handling of a vehicle, firearm, air gun, or bow and arrow may be fined not more than $1,000 or imprisoned not more than one year in county jail or both.

"(2) A high degree of negligence is conduct which demonstrates ordinary negligence to a high degree, consisting of an act which the person should realize creates a situation of unreasonable risk and high probability of death or great bodily harm to another."

such conduct amounted to a high degree of negligence. It was not necessary for the state to prove why the defendant crossed the highway or committed the act. The defendant did not prove an excusable reason for doing so. This is not a case of defendant's being confronted with an emergency and making the wrong judgment, at least, there was sufficient evidence for the jury to have so believed. There was sufficient credible evidence to convince the jury beyond a reasonable doubt that the defendant was guilty. The power of this court to disturb a finding of a jury in a criminal case ends with the discovery of evidence to sustain the verdict. *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775. The test on review is whether there is credible evidence upon which a jury could be convinced beyond a reasonable doubt of the accused's guilt. *Johns v. State,* ante, p. 119, 109 N. W. (2d) 490; *State v. John* (1960), 11 Wis. (2d) 1, 103 N. W. (2d) 304.

The last issue raised is the trial court erred in not granting a new trial. It is argued the count charging the defendant with negligent operation of his car while under the influence of intoxicants should have been dismissed on defendant's motion and the refusal to dismiss it was unfair and created a prejudicial situation in which the jury felt it had to convict as a matter of compromise as indicated by the jury's recommendation for leniency. In *Ruffalo v. State* (1928), 196 Wis. 446, 220 N. W. 190, the court stated there could be force in an argument based on a recommendation of leniency to establish a compromise verdict if the case was close or doubtful, and in *Tendrup v. State* (1927), 193 Wis. 482, 214 N. W. 356, in commenting on a recommendation of leniency, that there could be considerable force to the argument that a reasonable doubt existed in the minds of the jury in a case where there was a substantial dispute. However, the "force" of such argument in this case, admitting arguendo it is a close case, falls short of

convincing us this was a compromise verdict. Both *Ruffalo* and *Tendrup* held that a recommendation of leniency does not in itself vitiate or impair the verdict. See also *O'Neil v. State* (1941), 237 Wis. 391, 296 N. W. 96. The acquittal of this defendant of the more-serious charge, coupled with a recommendation for leniency of the charge found to be proved, does not necessarily indicate that the guilty finding was a compromise verdict or that the jury was not satisfied of his guilt beyond a reasonable doubt.

What reasons the jury had for recommending leniency is a matter of speculation. The jury might have felt that since the defendant was injured, his car smashed up in the accident, that he had an honorable discharge from the armed forces, that he got into trouble because of his good Samaritan deed in towing Mabbatt's car, was worthy of consideration. However, the law is and should be that a recommendation of leniency does not vitiate and nullify the verdict.

*By the Court.*—Judgment affirmed.