STATE of Wisconsin, Plaintiff-Respondent,

v.

Derrick D. JOHANNES, Defendant-Appellant.

Court of Appeals

*No. 98–2239–CR. Submitted on briefs May 21, 1999.—Decided June 30, 1999.*

(Also reported in 598 N.W.2d 299.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Gregory A. Petit* of *Kachinsky & Petit Law Offices* of Neenah.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *William C. Wolford*, assistant attorney general.

Before Nettesheim, Anderson and Mueller,[1] JJ.

ANDERSON, J.   Derrick D. Johannes appeals from a judgment of conviction for two counts of homicide by negligent operation of a motor vehicle violating § 940.10, STATS.; two counts of causing great bodily harm by negligent operation of a motor vehicle violating §§ 346.62(4) and 346.65(5), STATS.; and one count of causing bodily harm by negligent operation of a motor vehicle violating §§ 346.62(3) and 346.65(3). He also

---

[1] Circuit Judge Emily S. Mueller is sitting by special assignment pursuant to the Judicial Exchange Program.

appeals from the circuit court's denial of his motion for postconviction relief. Johannes challenges the sufficiency of the evidence to support the jury's verdict, the court's denial of his motion to dismiss, and the court's refusal to instruct the jury to unanimously agree on the criminally negligent act. Primarily, he argues that the State failed to submit evidence proving that he had any warnings prior to his negligent conduct. Without such warnings, he contends that his conduct cannot be considered criminal, but rather only ordinary negligence. We disagree and determine that the jury was presented with sufficient evidence to conclude that Johannes was criminally negligent. As a result, we affirm the judgment and the order.

## BACKGROUND

It was a dry and cloudy afternoon when Johannes' motor vehicle crossed the centerline of a two-lane highway and caused a multiple-car accident. The auto accident resulted in two deaths and serious injuries to three individuals. Immediately prior to the accident, Johannes was observed slumped over in the driver's seat. He also failed to take any evasive actions; he did not brake or swerve before crossing the highway's centerline.

When questioned by officers at the scene, Johannes could not recall what happened to cause the accident. He stated that he had been up until around 1:00 or 2:00 a.m. the night before and that when the collision occurred the other three occupants of his car were asleep. At an interview a few weeks later, Johannes commented that "[h]e didn't really go to bed" the night before the accident. When quizzed about the cause of the accident this time, he replied that he was adjusting the stereo. Johannes confessed to others

involved in the accident that he probably fell asleep at the wheel immediately prior to the collision.

Johannes was charged with five counts of negligent operation of a motor vehicle—two counts for causing death, two counts for causing great bodily harm and one count for causing bodily harm. *See* §§ 940.10, 346.62(3) & (4) and 346.65(3) & (5), STATS. After a two-day jury trial, Johannes was found guilty on all counts. He subsequently moved the court for postconviction relief, raising issues identical to those he presents to this court. His motion was denied. Johannes appeals.

### DISCUSSION

On appeal, Johannes argues that the evidence was insufficient for the jury to find him guilty of criminal negligence. He insists that the verdict should be overturned because criminal negligence requires that specific warnings be given to a defendant before the negligent conduct occurs. Such warnings would signal to a person that he or she should take precautions. The record is devoid of evidence, he argues, demonstrating that he had any prior warning that he might fall asleep while driving; so, this conduct is merely ordinary negligence, not criminal negligence. Also based on this argument, he appeals from the denial of his motion to dismiss for insufficient evidence to sustain a conviction which was made at the close of the State's case-in-chief.

Additionally, Johannes raises two arguments requesting a new trial. First, he asserts that WIS J I—CRIMINAL 517 should have been given to the jury. Second, he contends that the issue of whether he fell asleep while driving was not fully tried because a defense expert witness was not allowed to testify.

## A. Sufficiency of the Evidence

Johannes disputes whether sufficient evidence was presented at trial to prove his convictions for causing a homicide, great bodily injury or bodily injury by negligent use of a motor vehicle. He asserts that the State did not meet its burden of proving that his negligent conduct met the high degree of negligence standard required for criminal negligence.[2] Specifically, he suggests that criminal negligence requires that the defendant receive specific warnings prior to the negligent act and, in his case, no evidence of any warnings was introduced at trial. Consequently, he urges this court to overturn the jury's guilty verdict.

Our review for sufficiency of the evidence supporting a criminal conviction is limited. It is the State's burden to prove the elements of each allegation beyond a reasonable doubt. We may not reverse a conviction "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poel-*

---

[2] The State is required to prove to the jury that the evidence shows beyond a reasonable doubt that the defendant committed all elements of the charged crime. The crime of homicide by negligent operation of a motor vehicle, § 940.10, STATS., consists of three elements: (1) the defendant operated a motor vehicle, (2) the defendant's operation of the vehicle was in a criminally negligent manner, and (3) the victim's death was caused by the criminal negligence. *See* WIS J I—CRIMINAL 1170. Section 346.62(3) and (4), STATS., differ only on element three; instead of criminal negligence resulting in death, these subsections require that such negligence caused bodily harm and great bodily harm, respectively. *See* WIS J I—CRIMINAL 2652 & 2654.

*linger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990). We do not substitute our judgment for the jury's. *See id.* at 507, 451 N.W.2d at 757–58. The jury determines the credibility of the witnesses, resolves conflicts in the testimony, weighs the evidence and draws reasonable inferences from the evidence. *See id.* at 503, 506, 451 N.W.2d at 756, 757. Our review is the same whether the evidence is direct or circumstantial. *See id.* at 503, 451 N.W.2d at 756. "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt," we may not overturn a verdict even if we believe that the trier of fact should not have found guilt based on the evidence before it. *See id.* at 507, 451 N.W.2d at 758.

We will begin by defining criminal negligence. Section 939.25, STATS., states that criminal negligence is "ordinary negligence to a high degree, consisting of conduct that the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another." Criminal negligence differs from ordinary negligence in two respects. First, the risk is more serious—death or great bodily harm as opposed to simple harm. Second, the risk must be more than an unreasonable risk—it must also be substantial. *See* WIS J I—CRIMINAL 1170.

Johannes supports his argument by relying on *Peterson v. Grattan*, 558 P.2d 1001 (Colo. Ct. App. 1976), *aff'd*, 578 P.2d 1063 (Colo. 1978); *Ansback v. Greenberg*, 256 S.W.2d 1 (Ky. Ct. App. 1952); and a 1957 opinion from the Wisconsin attorney general, 46 Wis. Op. Att'y Gen. 110 (1957). He believes these authorities demonstrate that criminal negligence requires that a defendant receive specific warnings before the negligent conduct. However, his reliance on

these authorities is misplaced; we find none of these authorities determinative of this issue.

First, neither of the cited cases involves *criminal* negligence. *Ansback* applied Georgia's standard for gross negligence in a civil suit. *See Ansback*, 256 S.W.2d at 3. And, *Peterson* concerned Colorado's standard for willful and wanton negligence, again, in a civil suit. *See Peterson*, 558 P.2d at 1003. These cases involve different standards of proof than is required for criminal negligence, and we find them to be of no precedential value.

Second, although the 1957 opinion of the attorney general states that "one who falls asleep while driving does not necessarily violate the statutes . . ., but that he [or she] may be found guilty if there is adequate additional evidence showing that he [or she] realized that if he [or she] persisted in driving he [or she] was likely to fall asleep" and lends support to Johannes' argument, this opinion is not binding on this court. *See* 46 Wis. Op. Att'y Gen. at 115. "An Attorney General's opinion is only entitled to such persuasive effect as the court deems the opinion warrants." *State v. Gilbert*, 115 Wis. 2d 371, 380, 340 N.W.2d 511, 516 (1983) (quoted source omitted). We find the analysis of more recent cases from our courts more illustrative on this issue.

Such a case is *State v. Barman*, 183 Wis. 2d 180, 515 N.W.2d 493 (Ct. App. 1994). Barman was charged with homicide by negligent operation of a motor vehicle after he failed to see a stop sign, entered an intersection without stopping and collided with another vehicle, killing three of its passengers. *See id.* at 185, 515 N.W.2d at 496. He argued on appeal that the statute that he was charged under was unconstitutionally vague because it did not specify the exact acts and

conduct it prohibited. *See id.* at 196–97, 515 N.W.2d at 501. Concluding that the statute was not unconstitutionally vague, we stated:

> Other jurisdictions have reached the same conclusion in evaluating their homicide by negligent operation of a vehicle statutes. Furthermore, the statute does give notice of what acts are prohibited. The statute makes clear that causing death by *highly negligent operation of a vehicle is prohibited.* True, the statute does not tell the public which specific acts are criminally negligent. The statute is incapable of such precision; whether a reasonable person would foresee that the conduct engaged in created an unreasonable and substantial risk of death or great bodily injury will necessarily vary with the facts of each case. This does not make the law unconstitutionally vague. [*See State ex rel. Zent v. Yanny,* 244 Wis. 342, 346–47, 12 N.W.2d 45, 47 (1943)] ("It is not necessary that the law be so definite that the offending operator of a vehicle may know with certainty just how negligent he may be in causing the death of another person before he becomes criminally liable under the negligent homicide statute. No operator of a vehicle has a legal right to be negligent in any degree.").

*Barman,* 183 Wis. 2d at 200–01, 515 N.W.2d at 502 (citations omitted). We held that specifying exactly what conduct constitutes criminal negligence is impossible but instead should be determined by an objective standard. *See id.* at 198–99, 515 N.W.2d at 501–02. "[A] defendant's acts are measured against whether a normally prudent person under the same circumstances should reasonably have foreseen such conduct exposed another to unreasonable risk and high probability of bodily harm." *Id.* at 199, 515 N.W.2d at 502.

Barman did not argue that his conduct should be viewed objectively. Instead, he argued that he could not be adjudged criminally negligent because he was not aware of his negligent conduct. *See id.* at 203, 515 N.W.2d at 503. He maintained that because he missed or did not see the stop sign, the *mens rea* element of criminal negligence had not been proven. *See id.* We disagreed, stating:

> Barman is mistaken. As we have already noted, the standard for criminal negligence is an objective one; defendant's conduct is judged from the perspective of a reasonably prudent person. Barman confuses criminal negligence with criminal recklessness.

*Id.*

This objective standard for determining criminal negligence was also applied in *State v. Wickstrom*, 14 Wis. 2d 416, 111 N.W.2d 176 (1961). Wickstrom was convicted of homicide by negligent operation of a motor vehicle upon facts remarkably similar to the case presently before us. Appearing to be slumped down in the driver's seat of his car, Wickstrom crossed the centerline of a highway at a high speed and struck the victim's car head on. *See id.* at 419, 111 N.W.2d at 177. Wickstrom averred that he crossed the centerline because the oncoming car had crossed into his lane. *See id.* at 419, 111 N.W.2d at 177. He argued on appeal that this evidence was insufficient to sustain the jury's verdict. *See id.* The court noted that which event precipitated the collision was a jury question because the jury's role is to evaluate conflicting testimony and determine who should be believed. *See id.* at 420, 111 N.W.2d at 178.

The court also explained that whether a defendant's negligent conduct was to such a high degree to

be criminal negligence was also a question for the jury to decide.

> Taking into consideration the circumstances under which the defendant was driving his car, the jury was entitled to find the defendant should have realized that crossing into the lane of an oncoming car 60 feet away, traveling 50 miles an hour, created a situation of unreasonable risk and high probability of death or great bodily harm to another and such conduct amounted to a high degree of negligence. *It was not necessary for the state to prove why the defendant crossed the highway or committed the act.*

*Id.* at 422–23, 111 N.W.2d at 179 (emphasis added).

*Wickstrom* states that evidence that the defendant crossed the centerline of the highway—an objective determination—is sufficient to support a jury's conclusion that the defendant was criminally negligent. *See id.* In addition, the *Wickstrom* court holds that the State does not have to prove *why* the defendant crossed the centerline of the highway, which is a subjective determination. Rather, a reasonably prudent person knows that crossing the centerline of a highway at a high speed creates a situation of unreasonable risk and high probability of death, great bodily harm or bodily harm to others.

■ In the present case, we conclude that Johannes asks us to apply a subjective, not objective, standard for criminal negligence. He argues that one can only be criminally negligent if he or she were specifically warned that his or her conduct may result in harm. We cannot agree. This argument suggests that the State had to present evidence that he was subjectively aware that falling asleep or adjusting the stereo would cause

him to cross the centerline. However, as *Wickstrom* instructs, the State meets its burden after submitting evidence of criminally negligent conduct—in this case, evidence that Johannes crossed the highway's centerline. Of course, a defendant remains free to present evidence to the jury that he or she hopes may explain such conduct. Should the jury accept the defendant's reasons for his or her conduct, such evidence may serve to mitigate the defendant's conduct down from the high degree of negligence required for criminal negligence. After reviewing the evidence from an objective perspective, we determine that it sufficiently supported the jury's conclusion that Johannes' conduct created a substantial and unreasonable risk of death, great bodily harm and bodily harm.[3]

### B. Request for Unanimity Jury Instruction

At trial, conflicting testimony was presented about why Johannes' vehicle crossed the highway's centerline. Some testified that Johannes stated he had fallen asleep, while others testified that he was adjusting the stereo at the time of the collision. Because of this conflicting testimony, he argues that the jury should have been given WIS J I—CRIMINAL 517, which would have instructed the jury that it had to agree on the specific act the defendant did that was criminally negligent. He contends that the instruction was required because if the jury's verdict rested upon his falling asleep while driving, he has a legal defense.

---

[3] Johannes also appeals from the denial of his motion to dismiss the charges. Because we determine that the evidence was sufficient to support the conviction, we need not address this portion of his appeal. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issues need be addressed).

■

A circuit court is required to give a requested jury instruction if the evidence reasonably requires it. *See Johnson v. State*, 85 Wis. 2d 22, 28, 270 N.W.2d 153, 156 (1978). When properly requested, a criminal defendant is entitled to have the jury instructed on a theory of defense supported by the evidence. *See id.* When determining whether evidence sufficiently supports a defendant's jury instruction request, we view the evidence in a light most favorable to the accused. *See id.*

A criminal defendant has a constitutional right to a unanimous jury verdict. However, a jury generally does not have to agree on the way a defendant participated in a crime but only must agree that the defendant committed the crime. *See State v. Giwosky*, 109 Wis. 2d 446, 453–54, 326 N.W.2d 232, 236 (1982). There are exceptions to this general rule for circumstances such as when the statute provides for alternate methods of committing the crime or if two acts are submitted to prove the crime and the defendant has a defense to one of these acts. *See* WIS J I—CRIMINAL 517 cmt. Under such circumstances, the jury must be instructed to reach a unanimous agreement on which was the criminal act. WISCONSIN J I—CRIMINAL 517, accordingly, informs a jury that even though evidence of more than one act which may constitute the crime was submitted, all the jurors "must be satisfied beyond a reasonable doubt that the defendant committed the same act and that the act constituted the crime charged."

■

Johannes contends that the evidence necessitated giving the jury this instruction. We are not persuaded. As we have previously stated, the criminally negligent act in this case was when Johannes drove across the

highway's centerline. The jury only had to unanimously conclude that Johannes committed this criminally negligent act; the jury was not legally required to unanimously agree about *why* he committed the act. Because we determine that whether Johannes was asleep or adjusting the radio are only different means or ways of committing a criminally negligent act and are not the criminally negligent act, we need not address his claim that sleep can be a legal defense to this crime. Accordingly, we conclude that Johannes is not entitled to a new trial on this basis.

## C. Controversy Not Fully Tried

Johannes' final argument is that, in the interest of justice, he should be given a new trial because the real controversy—whether or not he fell asleep while driving—has not been fully tried. He contends that if the jury had been permitted to hear testimony from his expert witness, a psychologist who he claims would explain Johannes' changing answer as to the accident's cause, it would have been able to determine the exact cause of the accident.

We have both inherent power and express statutory authority to reverse a judgment of conviction and remit a case for a new trial in the interest of justice. *See State v. Hicks*, 202 Wis. 2d 150, 159, 549 N.W.2d 435, 439 (1996). "[A] new trial may be ordered in either of two ways: (1) whenever the real controversy has not been fully tried; or (2) whenever it is probable that justice has for any reason miscarried." *Id.* at 159–60, 549 N.W.2d at 439. A situation in which the controversy may not have been fully tried can occur when the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case. *See id.* at 160, 549 N.W.2d at 440.

Johannes contends that evidence regarding whether he was sleeping at the time of the accident was erroneously excluded, resulting in the real controversy at issue not being fully tried. Again, we disagree. As we have stated when addressing Johannes' previous arguments, the critical issue for determining if he was criminally negligent is whether he crossed the centerline of the highway. We agree with the circuit court that the jury already was presented all the relevant evidence as to why the accident occurred. In any event, we note that the jury was essentially informed of the psychologist's testimony in defense counsel's closing argument. We find that this expert testimony was not necessary to fully try the case and does not necessitate a new trial.

## CONCLUSION

We find sufficient evidence in the record to support Johannes' convictions for negligent operation of a motor vehicle. We apply an objective standard to determine criminal negligence. In this case, the criminally negligent act, and also the critical issue, is the jury's conclusion that Johannes crossed the highway's centerline. We reject his arguments for a new trial because each pertains to an issue not critical to his convictions. Consequently, we affirm the judgment and the order.

*By the Court.*—Judgment and order affirmed.