STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronald L. WILLE, Jr., Defendant-Appellant.†

Court of Appeals

*No. 2005AP2839–CR. Submitted on briefs June 14, 2006.
—Decided January 31, 2007.*

2007 WI App 27

(Also reported in 728 N.W.2d 343.)

† Petition to review denied 4/17/07.

531

On behalf of the defendant-appellant, the cause was submitted ·on the briefs of *Jerome A. Maeder* and *Benjamin C. Welch* of *Jerome A. Maeder, S.C.*, Wausau.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Marguerite M. Moeller*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Deininger and Higginbotham, JJ.

¶ 1. DEININGER, J. Ronald Wille appeals a judgment convicting him of causing death by procuring alcohol for a minor, a violation of WIS. STAT. § 125.075(1) (2003–04).[1] He contends the evidence at trial was insufficient to convict him of violating the cited statute. Wille also claims the circuit court erred in the following ways: (1) by improperly instructing jurors regarding the required causal link between his actions and the ensuing death; (2) by admitting evidence of the victim's blood alcohol content and the results of drug testing; and (3) by permitting testimony from an investigator who the State had not named as a potential witness prior to trial. We conclude that (1) to show a violation of § 125.075(1), the State needed to establish only that Wille knew or should have known that the alcohol beverages he procured for a party would be consumed by persons under the age of twenty-one, and (2) the evidence at trial was sufficient to establish such knowledge. We also reject Wille's other claims of error and, accordingly, we affirm the judgment of conviction.

## BACKGROUND

¶ 2. Seventeen-year-old Kristopher Meshak died from traumatic brain injuries he sustained in a car accident after attending a New Year's Eve party at

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

which he had consumed beer. Evidence at trial established that Ronald Wille, who was nineteen at the time, had purchased two half-barrels of beer with his credit card and arranged for their delivery to the party. Witnesses testified that Wille sold red plastic cups for $5.00 each to party attendees, who could then use the cups to obtain as much beer from the barrels as they wanted. Witnesses also testified that Meshak drank beer from the barrels Wille had procured, and that Meshak was highly intoxicated when he left the party.

¶ 3. The State charged Wille under Wis. Stat. § 125.075(1) with procuring alcohol beverages for a person under the age of eighteen, the consumption of which resulted in the person's death. A jury found Wille guilty and the court placed him on five years' probation with numerous conditions. He appeals.

## ANALYSIS

### *Sufficiency of the Evidence*

¶ 4. We first address Wille's claim that the State produced insufficient evidence at trial to convict him of violating Wis. Stat. § 125.075(1). If Wille were to prevail on this claim, his claims of trial court error would be moot. *See State v. Schutte*, 2006 WI App 135, ¶ 13, 295 Wis. 2d 256, 720 N.W.2d 469, *review denied* (WI Oct. 10, 2006) (No. 2005AP0658–CR). As is often the case with claims of insufficient evidence, the dispute in this case is not so much over the probative value of the State's evidence as it is over the nature of the conduct the legislature intended to criminalize. *See id.*, ¶ 15. We therefore address first the question of what the State was required to prove in order to convict Wille of

538

violating § 125.075(1), which is a question of statutory interpretation and thus one of law that we decide de novo. *See State v. Setagord,* 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997).

¶ 5. WISCONSIN STAT. § 125.075(1) provides as follows:

> Any person who procures alcohol beverages for or sells, dispenses or gives away alcohol beverages to a person under 18 years of age . . . may be penalized as provided in sub. (2) if:
>
> (a) The person knew or should have known that the underage person was under the legal drinking age; and
>
> (b) The underage person dies or suffers great bodily harm . . . as a result of consuming the alcohol beverages provided . . . .

Subsection (2) of the statute renders the violation a Class G felony if the underage person dies. Section 125.075(2)(b).

¶ 6. The Criminal Jury Instructions Committee describes the elements of the offense this way:

> 1. The defendant provided alcohol beverages to [the victim].
>
> "Provided," as used here, means selling, dispensing, or giving away alcohol beverages.
>
> "Alcohol beverages" means fermented malt beverages and intoxicating liquor.
>
> 2. The defendant provided alcohol beverages to [the victim] at a time when [the victim] was under 18 years of age and was not accompanied by a parent.

3. The third element requires that the defendant knew or should have known that [the victim] was under the legal drinking age ["21 years of age"].

. . . .

4. [The victim] died . . . as a result of consuming alcohol beverages provided by the defendant.

This requires that the consumption of such alcohol beverages was a substantial factor in causing death . . . to [the victim].

WIS JI—CRIMINAL 5050 (footnotes omitted).[2]

¶ 7. Wille admits that he purchased two half-barrels of beer for the party and that, "for a brief time," he sold "red cups at the party." He claims, however, that the State produced no evidence that he sold a cup or dispensed beer to the victim, or that he even knew Meshak was at the party. Wille contends that, because the statute requires that he "knew or should have known that *the* underage person was under the legal drinking age," WIS. STAT. § 125.075(1)(a) (emphasis added), he cannot be convicted of violating the statute unless the State proved that Wille dispensed beer directly to Meshak, or at a minimum, that he knew

[2] The version of WIS JI—CRIMINAL 5050 in effect at the time of the trial in this case inadvertently omitted the article "a" before "substantial factor" in the last quoted sentence of the instruction. According to the trial transcript, when reading the instruction to the jury, the circuit court said "a substantial factor." Later, when jurors noted the omission in the written instruction and questioned whether the sentence should be read as requiring the alcohol consumption to be "a substantial factor" or "the substantial factor," the court informed jurors that the correct reading was "a substantial factor." The court's supplemental instruction in response to the jurors' question is the subject of Wille's second claim of error.

Meshak was or would be at the party consuming beer that Wille had purchased. He also asserts that, because there was evidence at trial that Meshak possessed some cans of beer at the party and may have simply poured his own beer into a red cup he picked up from the ground, the State failed to prove that Wille played any role whatsoever in providing the beer that Meshak consumed prior to the fatal accident.

¶ 8. In support of his position that WIS. STAT. § 125.075(1)(a) requires a defendant to know that a specific victim will consume the alcohol beverages provided, Wille points to the affirmative defense described in § 125.075(1m). The introductory language of subsection (1m) states that "[i]n determining . . . whether a person knew or should have known that the underage person was under the legal drinking age, all relevant circumstances surrounding the procuring, selling, dispensing or giving away of the alcohol beverages may be considered." The statute then describes the following potentially exculpatory circumstances and provides that if all four of them occur, they constitute "a defense to criminal liability" under the statute:

> (a) The underage person falsely represents that he or she has attained the legal drinking age.

> (b) The underage person supports the representation under par. (a) with documentation that he or she has attained the legal drinking age.

> (c) The alcohol beverages are provided in good faith reliance on the underage person's representation that he or she has attained the legal drinking age.

> (d) The appearance of the underage person is such that an ordinary and prudent person would believe that he or she had attained the legal drinking age.

541

Section 125.075(1m). In Wille's view, because the affirmative defense clearly contemplates "some form of interaction" between the defendant and the victim, criminal liability under the statute requires that a defendant have knowledge that a specific victim will consume the provided beverages.

¶ 9. We first address Wille's contention that the elements of the statutory affirmative defense establish that the legislature intended to impose liability under Wis. Stat. § 125.075(1) only when a defendant has had direct contact with a particular victim or otherwise knows of the specific victim for whom alcohol beverages are procured. The contention suffers from a logical flaw. Affirmative defenses to criminal liability permit defendants to avoid liability if they can show that their conduct falls within a particular subset of circumstances encompassed by a broader set of circumstances that describe the crime. For example, a defendant who batters another may avoid a conviction for battery if he or she can prove that the battery in question was within the subset of batteries committed in self-defense. Here, the legislature could well have intended to criminalize the providing of alcohol to minors when a death results regardless of whether a "personal interaction" occurred between defendant and victim, while at the same time providing for an affirmative defense when the prohibited conduct falls within the subset of occasions where a personal interaction occurred that included certain features.

¶ 10. Accordingly, we conclude that the existence and elements of the affirmative defense in Wis. Stat. § 125.075(1m) tells us nothing about the scope of the conduct the legislature intended to criminalize under § 125.075(1). We thus turn to the general rules of

542

statutory construction. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation, but as part of a whole, in relation to the language of surrounding or closely related statutes, and reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48.

¶ 11. Wille makes much of the fact that WIS. STAT. § 125.075(1) refers several times to the victim in the singular: "to a person under 18 years of age"; "the underage person was"; "[t]he underage person dies." *Id.* We conclude, however, that the reference to a single minor or underage person in the statute does not preclude its application to a defendant who procures alcohol beverages for a group of persons that the defendant knew or should have known were underage persons.

¶ 12. We first note that WIS. STAT. § 990.001(1) provides that, when interpreting Wisconsin statutes, "unless [it] . . . would produce a result inconsistent with the manifest intent of the legislature . . . [t]he singular includes the plural, and the plural includes the singular." We find no expression of "manifest [legislative] intent" that, under WIS. STAT. § 125.075(1)(a), a defendant must know that a particular individual for whom he or she procured alcohol was an underage person. Applying the directive of § 990.001(1) to § 125.075(1),

the statute may be interpreted as criminalizing the procuring of alcohol beverages for "person[s] under 18 years of age" if the defendant "knew or should have known that the underage person[s were] under the legal drinking age" and one of the underage persons (who is under eighteen) dies "as a result of consuming the alcohol beverages."[3]

¶ 13. We next observe that many criminal statutes refer to the victim of the described crime in the singular. Interpreting those statutes as requiring that a defendant must knowingly direct his or her prohibited conduct toward a particular individual would produce results that are arguably "absurd or unreasonable." *See Kalal*, 271 Wis. 2d 633, ¶ 46. For example, Wis. Stat. § 941.327(2)(a) makes it a crime to "[t]amper[] with any household product" if the tampering is done "with intent to kill, injure or otherwise endanger the health or safety of any person." Although the statute defines the requisite intent as directed to "any person" in the singular, it would be absurd to conclude the legislature intended that a defendant could escape criminal liability because he or she intended to kill or injure many, unidentified persons by tampering with a product but had no "face-to-face" interaction with a specific victim who used the product and died as a result.

---

[3] Notably, although the victim of the crime must be under eighteen, it is not necessary that the defendant knew or should have known that the persons for whom alcohol beverages were procured were "under 18 years of age"; the required knowledge is that the persons were "under the legal drinking age," i.e., under the age of twenty-one. *See* Wis. Stat. § 125.075(1)(a). Wille does not dispute that the victim, Meshak, was seventeen at the time he consumed beer at the party, and Wille acknowledged at trial that he knew that persons "under the legal drinking age" would be in attendance and consume the beer Wille procured for the party.

¶ 14. We conclude it would be equally absurd or unreasonable to interpret WIS. STAT. § 125.075(1) as requiring a personal interaction between the defendant and the victim, or as requiring that the defendant have knowledge that a particular underage person would consume the alcohol procured by the defendant. If we were to adopt Wille's proffered interpretation, a defendant who procures alcohol beverages and provides them to a single minor in a face-to-face transaction could be prosecuted under the statute, but a defendant who arguably engages in more blameworthy conduct by procuring alcohol beverages for dozens of minors could not be prosecuted, even though the risk of a tragic result is far greater in the second scenario. Not only would such a construction be absurd or unreasonable, we conclude that it would also be contrary to the "scope, context, and purpose" of the statute, *Kalal*, 271 Wis. 2d 633, ¶ 48, given that one of the textually manifest purposes of WIS. STAT. ch. 125 is to keep alcohol beverages out of the hands of minors and other underage persons by, in part, imposing civil and criminal penalties on those who provide it to them. *See, e.g.,* WIS. STAT. §§ 125.035(4)(b); 125.07(1), (3), and (4).

¶ 15. We thus conclude that a violation of WIS. STAT. § 125.075(1) is proven when a defendant is shown to have "procure[d] alcohol beverages for ... [one or more persons who are] under 18 years of age," if the defendant "knew or should have known that the underage person[s were] under the legal drinking age" and an "underage person [who was under eighteen when provided the beverages] dies ... as a result."

¶ 16. We next consider whether the State produced sufficient evidence at trial to permit jurors,

acting reasonably, to be convinced beyond a reasonable doubt, by evidence they had a right to believe and accept as true, that Wille engaged in such conduct. *See State v. Poellinger,* 153 Wis. 2d 493, 503–04, 451 N.W.2d 752 (1990). " 'The test is not whether this court or any of the members thereof are convinced [of the defendant's guilt] beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced . . . .' " *Id.* (citation omitted). We will not reverse a conviction for insufficient evidence " 'unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.' " *State v. Johannes,* 229 Wis. 2d 215, 221, 598 N.W.2d 299 (Ct. App. 1999) (citing *Poellinger,* 153 Wis. 2d at 501). We are not so convinced.

¶ 17. Wille admitted on cross-examination that he knew when he purchased and arranged for the delivery of the barrels of beer to the party site that "an underage drinking party" was to occur and that party attendees would include "people . . . under the legal drinking age." He also testified that he expected high school students would hear about the party and "show up." Thus, there is plainly sufficient evidence for reasonable jurors to conclude beyond a reasonable doubt that Wille procured alcohol beverages for persons he knew were under the legal drinking age, which, as we have discussed, satisfies the knowledge element under WIS. STAT. § 125.075(1)(a). Wille does not dispute that the victim, Meshak, was under eighteen when he attended the party, or that Meshak was not accompanied by a par-

ent.[4] Although he challenges the instruction on causation and the admission of certain evidence of Meshak's level of intoxication, Wille does not dispute, for purposes of his insufficient evidence claim, that the State produced evidence at trial that would permit reasonable jurors to conclude beyond a reasonable doubt that Meshak's consumption of alcohol beverages was "a substantial factor" in causing the fatal car accident.

¶ 18. What Wille does dispute is whether the State produced sufficient evidence to allow jurors to conclude that Meshak consumed any of the beer that Wille provided to the party. Wille asserts that "no evidence was submitted to show that Wille sold a cup to Meshak or to show that Wille provided the alcohol that Meshak was drinking from the red cup." Because there was testimony that cups could be found laying around at the party and that Meshak had brought several cans of beer to the party, Wille suggests that jurors could only speculate as to the true source of the alcohol beverages that Meshak ingested prior to his car accident. We disagree and conclude instead that the State produced sufficient evidence to permit jurors to reasonably infer that Meshak consumed some of the beer that Wille admittedly procured for the underage persons at the party.

¶ 19. An attendee of the party testified that he saw Meshak drink beer from a red cup and that he saw Meshak fill the cup once from one of the kegs at the party. This witness estimated that Meshak had con-

---

[4] WISCONSIN STAT. § 125.075(1) includes a cross-reference to WIS. STAT. § 125.07(1)(a), which prohibits procuring alcohol beverages for an underage person only if the underage person is "not accompanied by his or her parent, guardian or spouse who has attained the legal drinking age."

sumed "about eight" cups of beer at the party, stating further that he had not seen Meshak fill his cup from any source of beer other than the keg and had not seen him with either a beer bottle or can in his hands. Another witness said that he was "pretty sure" that the beer he and Meshak were "slamming" near the end of the party was from one of the barrels at the party.[5] This same witness had earlier told a detective that he had seen Meshak "drinking fast and from the barrel of beer." Finally, a third witness testified that he had seen Meshak fill "his cup from the half-barrel" "more than once, I believe," although this witness later said, "I don't remember seeing him just fill it up, but I know he was drinking out of a red cup."

¶ 20. In sum, we are satisfied that the State presented sufficient evidence at Wille's trial to permit jurors, acting reasonably, to be convinced beyond a reasonable doubt by evidence they had a right to believe, *see Poellinger*, 153 Wis. 2d at 503–04, that Wille procured alcohol beverages for Meshak, who was a minor, knowing that the beer being provided would be consumed by underage persons, and that Meshak's consumption of the beer Wille provided was a substan-

---

[5] This witness later said that he didn't "recall [Meshak] ever actually going to the half barrel and getting his beer himself. I mean, when someone goes to a half barrel and they come back with a cup of beer, I mean, you only know how much you got in your cup." Wille characterizes this testimony as a repudiation of the witness's earlier testimony that he was "pretty sure" that Meshak had consumed beer from one of the barrels at the party. We reject the characterization—jurors could reasonably interpret the witness's testimony to mean that, although the witness never watched Meshak draw a beer from the barrel, the fact that Meshak went to the barrel and came back with beer in his cup allowed the witness to be "pretty sure" Meshak's beer came from the barrel.

tial factor in causing Meshak's death. Before moving on to Wille's claims of trial court error, we briefly address arguments Wille advances in his opening brief to the effect that our interpretation of WIS. STAT. § 125.075(1) contravenes legislative intent and good public policy.

¶ 21. Wille asserts that the legislature's "motive . . . in drafting WIS. STAT. § 125.075 was not to have young men and women who are recent high school graduates prosecuted because they brought beer to ad hoc parties," and that the legislature "intended this statute to be used only in the circumstance[s] where a person knowingly provides a specific minor or minors with an alcoholic beverage." As we have discussed, however, nothing in the plain language of the statute or its context suggests the legislative intent that Wille proffers. Wille provides nothing beyond his own rhetoric as proof that the legislature intended to limit the reach of WIS. STAT. § 125.075(1) as he argues.

¶ 22. For example, Wille posits that, under our interpretation of WIS. STAT. § 125.075(1), anyone who brings a bottle of wine to a family gathering, knowing "that minors could be present," risks being convicted of a felony. He then asks, "Did the legislature intend to make a felon out of any person who brings an intoxicant to a party that the victim may have shared?" Our response is straightforward: based on the language it enacted, the legislature has indeed criminalized the bringing of intoxicants to a party, *if* the alcohol beverages are provided to a person under eighteen who dies or suffers great bodily harm as a result of its consumption, *and* the provider knew or should have known that one or more underage persons would consume the provided beverages. Thus, in Wille's hypothetical, the provider of wine to a family gathering need not fear a felony prosecution if he or she knows only that "minors

549

could be present." If, however, the wine provider knows or should know, as Wille admits to having known, that the alcohol beverage is being provided for consumption by persons under the legal drinking age, a prosecution and conviction under § 125.075 could indeed follow if a minor (who is not accompanied by a parent or guardian, *see* footnote 4) consumes the provided wine and dies as a result of its consumption. In sum, Wille has not persuaded us that our interpretation will result in prosecutions that contravene public policy.

*Instruction on Causation*

¶ 23. Our review of the trial court's jury instructions is deferential; we inquire only whether the trial court misused its broad discretion in instructing the jury. *See Young v. Professionals Ins. Co.*, 154 Wis. 2d 742, 746, 454 N.W.2d 24 (Ct. App. 1990). We will reverse and order a new trial only if the jury instructions, taken as a whole, misled the jury or communicated an incorrect statement of the law. *See Miller v. Kim*, 191 Wis. 2d 187, 194, 528 N.W.2d 72 (Ct. App. 1995). Whether jury instructions are a correct statement of the law is a question of law that we review de novo. *State v. Neumann*, 179 Wis. 2d 687, 699, 508 N.W.2d 54 (Ct. App. 1993). The choice among requested instructions which correctly state the law, however, is a matter for the exercise of trial court discretion, based upon the facts adduced at trial. *See State v. Lenarchick*, 74 Wis. 2d 425, 455, 247 N.W.2d 80 (1976).

¶ 24. Wille claims the trial court erred in instructing jurors that, to find Wille guilty of the charged crime, Meshak's consumption of alcohol provided by Wille was

required to be "a" substantial factor in causing Meshak's death, instead of "the" substantial factor, as Wille requested. Alternatively, he contends the court should have also instructed jurors that, to be "a substantial factor," the death had to be "a natural and probable consequence" of Wille's conduct.[6] We are not persuaded that the trial court erred in instructing jurors that Wille could be found guilty if Meshak's consumption of alcohol provided by Wille was "a substantial factor" in causing Meshak's death, or that it erroneously exercised its discretion by refusing to insert the additional language Wille requested.

¶ 25. As we have noted (see footnote 2), the current version of WIS JI—CRIMINAL 5050 places the indefinite article "a" before "substantial factor," and the omission of any article in the prior version appears to have been an oversight. The Jury Instructions Committee explains as follows in a footnote to the current instruction:

> The Committee has treated this offense as one involving the traditional "substantial factor" causal

---

[6] We note that Wille neither objected to WIS JI—CRIMINAL 5050 nor requested any additional language at the instruction conference. As we have noted, however, the printed pattern instruction the parties reviewed at that time had neither "a" nor "the" immediately before "substantial factor." (See footnote 2.) The transcript reflects that the trial court said "a substantial factor" when instructing the jury and Wille made no objection to the instruction as read by the court. When the jury inquired as to whether the written instruction should read "a" or "the" substantial factor, however, Wille argued for "the" and, alternatively, for the additional "natural and probable consequence" language. The court denied both requests. We are satisfied that, by objecting to the supplemental instruction given in response to the jurors' question, Wille sufficiently preserved the issue for appeal.

relationship employed for criminal offenses. However, it should be noted that [Wɪs. Sᴛᴀᴛ.] § 125.075 does not directly refer to the defendant's conduct causing the harm. Rather, the statute refers to the harm occurring "as a result of consuming the alcohol beverages provided" in violation of the statute § 125.075(1)(b). Since it is not clear whether this approach was intended to indicate a different causal requirement, the Committee concluded that the regular "substantial factor" test should be used.

This conclusion is supported by *State v. Bartlett,* 149 Wis. 2d 557, 439 N.W.2d 595 (Ct. App. 1989), where the court construed "results in" as used in [Wɪs. Sᴛᴀᴛ.] § 346.17(3). The court held that the statute was not unconstitutionally vague because "results in" means "cause" and therefore defines the offense with reasonable certainty. The court further held that the evidence was sufficient to support the conviction because it showed that the defendant's conduct was a substantial factor in causing the death. The court noted that more than but-for cause is required: "The state must further establish that 'the harmful result in question be the natural and probable consequence of the accused's conduct,' *i.e.,* a substantial factor." 149 Wis. 2d 557, 566, citing *State v. Serebin,* 119 Wis. 2d 837, 350 N.W.2d 65 (1984).

██

¶ 26. We may consider the Criminal Jury Instructions Committee's rationale and conclusion as "persuasive" authority on the issue. *See State v. Ellington,* 2005 WI App 243, ¶ 8, 288 Wis. 2d 264, 707 N.W.2d 907. Moreover, our own review of the cases the Committee relies on, *State v. Serebin,* 119 Wis. 2d 837, 350 N.W.2d 65 (1984), and *State v. Bartlett,* 149 Wis. 2d 557, 439 N.W.2d 595 (Ct. App. 1989), convince us that the trial court correctly instructed jurors that Wɪs. Sᴛᴀᴛ. § 125.075(1) requires a showing that Meshak's con-

sumption of the provided alcohol needed to be "a substantial factor in causing [Meshak's] death."

¶ 27. We further conclude that the court did not err in refusing to add to the instruction that Meshak's death must be shown to have been "the natural and probable consequence of the accused's conduct," which is the language Wille requested the trial court to insert. As the supreme court explained in *Serebin*, the phrase "a substantial factor" is the equivalent of "the natural and probable consequence of the accused's conduct." *Serebin*, 119 Wis. 2d at 849 (citation omitted). We agree with the State that it is not an erroneous exercise of discretion for a trial court to decline to provide jurors with alternative language that communicates the same concept as other language already included in the instruction.

¶ 28. Before taking up Wille's claims of evidentiary error, we note that he also argues in his opening brief that the jury, in attempting "to render a just verdict was clearly torn between convicting Wille of a crime that he did not do because the jury's interpretation of 'a' cause made them find him guilty," and that the jury "was hoping that the court would instruct them that it had to be 'the' cause and they would have found him not guilty." Wille provides no record citations for these assertions, nor could he. *See, e.g.,* WIS. STAT. § 906.06(2) ("[A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith . . . ."). Thus, Wille's assertions regarding what prompted jurors to find him guilty are

553

pure speculation. Moreover, even if the jury's verdict did in fact turn on whether Meshak's consumption of the provided alcohol was "a" or "the" substantial factor in causing Meshak's death, as we have explained, jurors were correctly instructed, and they could thus properly find Wille guilty if they concluded that Meshak's consumption of beer provided by Wille was a substantial factor in causing Meshak's death.

*Evidentiary Issues*

¶ 29. Wille next claims error in the admission of testimony regarding certain test results showing (1) the victim's blood alcohol content, and (2) the absence of certain drugs in his system at the time of the fatal accident. A trial court's decision to admit evidence is discretionary and will not be disturbed unless the court has erroneously exercised its discretion. *See Schutte*, 720 N.W.2d 469, ¶ 45. In addition, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Wis. Stat. § 901.03(1). Finally, when determining whether to reverse a criminal conviction and order a new trial, a court may conclude that a "constitutional or other error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *State v. Harvey*, 2002 WI 93, ¶ 49, 254 Wis. 2d 442, 647 N.W.2d 189 (citing *Neder v. United States*, 527 U.S. 1, 18 (1999)).

¶ 30. The county coroner was permitted to testify that, as part of his investigation into Meshak's death, he reviewed medical records from the hospital and clinic where Meshak was treated after the accident, and in

particular, a clinic record that reported Meshak's "blood alcohol level was 138 milligrams per deciliter of blood." The coroner was also permitted to testify that he reviewed a "urine toxicology screen" that tested negative for "PCP . . . Benzocaine . . . Cocaine . . . Amphetamine groupings . . . Cannabis . . . Opiates . . . barbiturates . . . and tricyclics." The blood and urine samples were taken when Meshak was admitted to the hospital following his car accident. Wille contends that admission of the blood alcohol test results violated WIS. STAT. § 885.235, and, further, that admission of both sets of results was improper because neither was supported by chain-of-custody evidence, thereby violating Wille's right to confront and cross-examine those who drew, handled and tested the blood and urine samples.

¶ 31. We conclude that even if the trial court erred in allowing the coroner to testify as to the victim's alcohol and drug test results, no "substantial right" of Wille's was affected by the admission of the testimony in question, *see* WIS. STAT. § 901.03(1), and further, that "it is 'clear beyond a reasonable doubt that a rational jury would have found [Wille] guilty' " without hearing the challenged testimony. *See Harvey*, 254 Wis. 2d 442, ¶ 49 (citation omitted). The State was under no obligation to establish the level of alcohol in Meshak's blood at the time of the accident, or even to prove that he was intoxicated to the degree required for a conviction under WIS. STAT. § 346.63 ("Operating under influence of intoxicant or other drug"). The absence of other drugs in Meshak's system also was not an element of the State's case. As we have discussed, the State needed to prove only that Meshak's consumption of alcohol beverages procured by Wille was "a substantial factor" in causing Meshak's death. We conclude there was more than sufficient evidence presented at trial to show that

Meshak drove away from the party in a highly intoxicated state. We therefore harbor no reasonable doubt that jurors would have found that the State established the necessary causal link between Meshak's consumption of alcohol and his death even if they had not heard the test result evidence.

¶ 32. Witnesses at the trial who had attended the party testified to all of the following. At 3:00 a.m., Meshak "had so much to drink that he shouldn't have been driving." A witness had declined to ride home with Meshak "because he was drunk." Another witness estimated Meshak had consumed "about eight" cups of beer during the party. Finally, a different witness testified that, "[t]owards the end of the party, we were slamming them [cups of beer] pretty fast." Thus, jurors did not need to hear that the coroner had relied, in part, on the victim's blood and urine test results in order for them to conclude beyond a reasonable doubt that Meshak's consumption of beer at the party was a substantial factor in Meshak's fatal accident. The testimony of witnesses who attended the party and testified to Meshak's alcohol consumption and his condition prior to leaving the party was more than sufficient to convince reasonable jurors beyond a reasonable doubt of Wille's guilt.

¶ 33. As for the impact of the victim's negative drug screen results, Wille asserts in his opening brief that a " 'baggie' containing drugs was found on Meshak at the scene of the crash by Deputy Wanta." The record citation Wille provides for this assertion, however, is to the testimony of a deputy who testified at trial to finding "some mints in a baggie on Mr. Meshak." Wille's counsel attempted without success to get the deputy to testify that the bag may have contained the drug ecstasy, not mints. The deputy acknowledged only that,

in his police report, he had stated that the baggie "contained what appeared to be multi-colored mints" which were turned over to another investigator for possible testing for drugs. We agree with the State that the alleged "drug evidence" never rose above the level of an insinuation by defense counsel that the mints may have been ecstasy. The testimony regarding the victim's drug screen results was thus even less probative of what caused Meshak's fatal accident than that of the blood alcohol testing. Accordingly, we are also satisfied beyond a reasonable doubt that jurors would have found Wille guilty had they not heard the coroner testify to the results of the drug screen.

### Testimony of Investigator Griesbach

¶ 34. Wille's final claim of trial court error also involves his trial counsel's insinuation while cross-examining Deputy Wanta that the mints found in Meshak's pocket at the time of the accident might have been the illicit drug ecstasy. On the morning of the second day of trial, the State called Investigator Nicholas Griesbach as a witness. Griesbach was the investigator to whom the bag of mints was given for a determination whether drugs might be present. His testimony, in short, was that, based on his experience and training in drug investigations, he determined by visual examination that the items in the baggie were not ecstasy pills nor any other type of controlled substance. Griesbach concluded that the bag contained what "looked like breath mints you'd get at a restaurant." Accordingly, the investigator did not forward the baggie of mints for further testing, and it was apparently subsequently turned over to Meshak's family with his other personal effects.

¶ 35. Wille objected to the State calling Griesbach to testify because he had not been included in the State's pre-trial list of intended witnesses. Although Wille did not cite WIS. STAT. § 971.23(1)(d) in his argument to the trial court, he argues on appeal that the State violated the requirement under the discovery statute that the State must, "[u]pon demand," provide the defendant before trial a "list of all witnesses and their addresses whom the district attorney intends to call at the trial." *Id.* In Wille's view, the alleged violation of the discovery statute should have prompted the trial court to preclude Griesbach from testifying at trial, which the court declined to do.

¶ 36. The State advances several rationales for upholding the trial court's ruling permitting Investigator Griesbach to testify regarding his examination of the mints. We agree with its first contention—that it is clear from the record that the State had *not* intended to call Griesbach as a witness, nor should it reasonably have been expected to anticipate the need to call him. The prosecutor told the trial court during argument on Wille's objection that Griesbach had not been named in any reports he had reviewed and that he first learned of Griesbach's involvement with the mints during Deputy Wanta's testimony on the first day of trial.

¶ 37. Because there appears to have been no indication in any police reports, witness statements or Meshak's medical records that Meshak had used controlled substances prior to the fatal accident, we agree with the State that there is no basis in the present record to conclude that "a reasonable prosecutor should have known" that Investigator Griesbach's testimony would be necessary or even helpful to the State's case. *See State v. DeLao*, 2002 WI 49, ¶ 30, 252 Wis. 2d 289,

643 N.W.2d 480 (explaining that Wis. Stat. § 971.23(1) embodies "an objective standard: what a reasonable prosecutor should have known and would have done under the circumstances of the case"). The prosecutor in this case could not reasonably have anticipated the defense would attempt to exploit a brief reference to possible drug testing in Deputy Wanta's report to insinuate that Meshak had used ecstasy prior to his fatal accident, thereby requiring testimony from the investigator who had examined the baggie of mints to refute the insinuation.

¶ 38. Accordingly, because the present record provides no basis for concluding that the State "intend[ed] to call" Investigator Griesbach as a witness at trial, or that a reasonable prosecutor should have anticipated the need for his testimony in the State's case-in-chief, we conclude the State did not violate Wis. Stat. § 971.23(1). The trial court therefore had no basis for excluding Griesbach's testimony. Given this conclusion, we need not address whether the prosecutor had "good cause" for not disclosing Griesbach as a witness prior to trial. *See* § 971.23(7m); *DeLao*, 252 Wis. 2d 289, ¶ 51.

¶ 39. Likewise, because the State did not violate the discovery statute, we have no need to consider whether Wille suffered prejudice on account of the State's failure to identify Griesbach as a witness prior to trial. *See id.*, ¶ 60. We note in this regard, however, that Wille contends he was "surprised" by Griesbach's testimony and he was therefore deprived of the opportunity "to obtain expert testimony to test and to testify concerning the drugs found on Meshak." We reject this contention. The only "surprise" at trial was Wille's insinuation that the illicit drug ecstasy was somehow

involved in Meshak's fatal accident, and any prejudice to Wille stemming from Griesbach's testimony was thus of Wille's own making.

¶ 40. Finally, we again note that Wille repeatedly states in his brief that "drugs . . . were found on Meshak" and, further, that those "drugs had . . . 'vanished' " prior to trial. These statements blatantly mischaracterize the record. The only assertion in the record that "drugs . . . were found on Meshak" came from the lips of Wille's defense counsel. The State contends that what "Wille attempted to do was to create the impression that the mints were actually drugs and then to prevent the State from disabusing the jury of that notion." We agree and conclude that counsel's ploy is as unavailing in this court as it was in the trial court.

## CONCLUSION

¶ 41. For the reasons discussed above, we affirm the appealed judgment.

*By the Court.*—Judgment affirmed.